Under authority given by Act No. 363 of 1940, plaintiff brought this suit against the State of Louisiana, through the Louisiana Highway Commission, to recover damages in the sum of $20,000 for the death of her husband by drowning on December 7, 1938, when his car slid or skidded off the side of a culvert on U.S. Highway 190 in West Baton Rouge Parish. The trial resulted in a judgment for the defendant, rejecting plaintiff's demand, and she has appealed.
While considerable testimony was taken in the case, there is not a great deal of dispute as to the facts. The deceased had been hunting on the day of his death, and around four o'clock in the afternoon he had returned to Erwinville where he remained until about seven o'clock and then left for his home accompanied by a neighbor, Frank Gauthier. He pulled out from a filling station on the west side of Bayou Poydras which runs through Erwinville and was crossing the bridge or culvert across this bayou when his car slipped or skidded off the south side of the culvert and fell into the bayou bottom side up, pinning the deceased in the car where he was drowned. His companion was rescued about three quarters of an hour after the car fell into the bayou.
It is necessary to describe the location of the accident, the nature of the surrounding territory and the manner in which the culvert was constructed and maintained in order to discuss and determine the charges of negligence made against the Highway Commission as the alleged cause of the accident. Highway No. 190 is paved with a slab 18 or 20 feet wide and runs in an easterly and westerly direction. It is a through and much traveled highway across the State. At the point of the accident, this highway is practically straight. Bayou Poydras is a stream 40 or 50 feet wide, and a culvert 44 feet and 10 inches long spans this bayou from bank to bank. There is a shoulder 4 or 5 feet wide on the south side of the concrete slab over the culvert and a shoulder on the north side some 20 feet wide. The shoulder on the south side slopes slightly from the edge of the concrete *Page 484 
to the side or edge of the culvert, the south edge of the culvert being about six inches lower than the surface of the concrete. At the time of the accident there were no guard rails on either side of the culvert, nor were there any guard rails, barriers, or other signs on the ends or wings of the culvert where it starts across the bayou.
On the west side of the bayou and south of U.S. Highway No. 190 there is located a filling station and cafe operated by Mr. A.A. Sikes. This station is about 100 feet south of the Highway and some 200 feet west of the bayou. There is a graveled entrance extending some 450 feet west of the bayou, and motorist driving into and out of this station usually come in and go out over this graveled entrance at a V shaped angle, that is a person leaving the station to go eastward on the highway would go in a northeasterly direction and would strike the highway at a point to the west of the culvert and then pull his car to the right along the south traffic lane of the highway.
On the east side of the bayou there is a graveled state highway, No. 73, which runs north and south along and parallel with the east bank of the bayou and intersects and crosses U.S. Highway 190 at the east end of the culvert. There is a filling station and mercantile store operated by Mr. Goudeau located about 80 feet south of the paved highway and just east of the graveled road. In other words, the place of business of Mr. Goudeau is almost directly opposite that of Mr. Sikes across the bayou. There were no guards, fencing or other barriers along the banks of the bayou from the ends of the culvert down to a point on a line with these two places of business.
The entrances to these two places of business were constructed after the paved highway and the culvert were built, and were constructed by the owners over the right of way with the usual permission granted by the Highway Commission.
There is evidence in the record to show that some complaint had been made to the officers of the Highway Commission several months before the accident of the dangerous condition of the intersecting roads at Bayou Poydras. On June 25, 1938, Honorable Ferd Claiborne, District Attorney of West Baton Rouge Parish, wrote the Commission a letter stating that the dangerous condition existing at this point had been directed to his attention by several citizens of the Parish; that he had directed the attention of the District Superintendent to the condition, and he asked the Commission to look into the matter and see what could be done to remedy the situation. While there is some intimation that these complaints had reference principally to the open and unprotected banks of the bayou at the ends of the culvert, there being instances where persons going from one of these stations to the other almost ran into the bayou, yet the notice was sufficiently inclusive to give the Commission notice of any dangers which might exist in the culvert taken in connection with all of the traffic and other conditions at the intersection.
After the accident, the Commission built a fence or bulkhead at the culvert on the south side, by putting posts at the ends of the culvert and stretching wire along the side of the culvert attached to these posts, and continuing the protection along the banks of the bayou south of the culvert with posts and boards or railings attached to them. On being asked why the Commission put this protection at the culvert, the Assistant Maintenance Engineer replied that after the accident someone reported the condition of the highway and he had the fence constructed.
The charge of negligence against the Highway Commission is that it failed to put guard rails on the culvert, built the shoulder of the road on the south side with too much slope or fall, and failed to put proper warning signs to protect the public in crossing the open culvert across the bayou. The defendant denies that there was any negligence in the construction and maintenance of the culvert, and avers that the accident was caused solely by the negligence of the deceased in failing to keep a proper lookout and in failing to keep his automobile on the paved portion of the road; that the deceased lived in the vicinity of the accident and was fully aware of the condition of the road and the culvert; that he drove his car too close to the south edge of the culvert on the shoulder of the road at night when a heavy rain was falling and the shoulder was slippery; that he was under the influence of intoxicating liquor at the time, all of which negligence on his part was the cause of his car slipping off the south side of the culvert into the bayou, and this alleged negligence is pleaded in the alternative as *Page 485 
one of the contributing causes of the accident in case it should be found that there was any negligence on the part of the Highway Commission.
There is no definite evidence as to just how the accident happened, but the neighbor in the car with the deceased stated that when they started home (they both lived a mile or so down the bayou) it was very dark and raining; that the deceased pulled out from near the Sikes station with his lights on, but as the windshield wiper on his side of the car was not working, he did not know just what happened, but within a few seconds he knew the car was turning over. The car remained bottom side up in the water until help arrived, during which time he was standing up in the back of the car with the water up to his lips. From the fact that the evidence shows that the car had gotten a little over half way across the bayou, turned over and came to rest facing parallel with the culvert and only about three feet from the side of the culvert, it seems to be the conclusion of all parties that the car was being driven with the right wheels on the shoulder and the left wheels on the concrete, when, because of the slippery condition of the shoulder, the car slid or skidded over the edge of the culvert on its right side.
The first question to determine is whether or not under the facts and circumstances above outlined the Highway Commission was guilty of negligence in constructing and maintaining the culvert and its approaches in the condition it was in at the time of the accident. If there was no negligence in this respect, it is obvious that there is no need of considering the contributory negligence vel non of the deceased.
The general rule is that the authority constructing a highway is charged with the duty of exercising ordinary care in constructing and maintaining the highway so as to render it reasonably safe for ordinary travel. Whether or not a highway is reasonably safe for ordinary travel depends on the facts and circumstances in each particular case.
In applying the test to the condition of the highway at the point of the accident in this case, we must consider the situation as it existed at the time of the accident, including the location of the filling stations, the intersecting roads, the amount of travel thereon, and the usual and ordinary actions of motorists in passing over the culvert. The authorities constructing and maintaining the road and the culvert can only be charged with the duty of anticipating those consequences which in the ordinary course of human experience might reasonably be expected to happen.
One of the highway engineers testified that the difference in a culvert and a bridge is that the former extends the entire width of the road, including the shoulders, while the latter covers only the traveled part of the road. In other words, a culvert from the standpoint of the traveler, presents to his view the same condition of the roadway as though he were traveling on any other part of the road, the shoulders across the culvert being the same as they are along the other parts of the road. However, in crossing a bridge, the width of the road is necessarily pulled in so as to force traffic onto the bridge. This engineer testified that guard rails and barriers are not usually put on culverts unless there is some special reason for them, such as a curve in the highway at the point, or where the culvert is not as wide as the highway.
To a motorist approaching this culvert from east or west there was no difference in the surface of the road ahead of him, including the pavement and the shoulders on either side, than there was on the other parts of the straight road for some distance on either end of the culvert, that is he had the same kind of pavement and shoulders across the culvert as he had on the fills and level surfaces of the straight road before reaching the culvert. To require the Highway Commission to put guard rails and barriers along such a culvert would also require it to put railings or guards along all embankments on a straight road where there could be danger of a motorist getting on the shoulder and slipping down the embankment. To establish such a requirement would greatly increase the cost of constructing and maintaining highways, and there seems to be no rule anywhere requiring guard rails under such conditions. See City of Dallas v. Maxwell et ux., Tex.Com.App., 248 S.W. 667, 27 A.L.R. 927, and annotations following this case beginning at page 937 and annotations beginning at page 1389, volume 86 A.L.R.
On page 940 of 27 A.L.R. there is an annotation of the case of Abbott v. Board of Com'rs of Wyandotte County, 94 Kan. 553, 146 P. 998, where the county commissioners were held liable for the failure to erect *Page 486 
wing guard rails at the point where the road at the approach to a bridge narrowed to such an extent that an automobile continuing on a straight line on the right side of the road would miss the bridge, it appearing that the deceased who was driving toward the bridge at night and in the exercise of due care, missed the bridge in that manner, except the rear wheel of the automobile struck the girder of the bridge. In the present case there was no narrowing of the road as it approached the culvert, and, as already stated, a motorist approaching the culvert and continuing on his right hand side of the road would not be suddenly confronted with an open culvert in his lane of travel.
But it is contended that because of the presence of the filling stations on both sides of the bayou, the unprotected banks between the stations created a hazard to motorists entering and leaving the stations. Regardless of the question of whether or not the Highway Commission was guilty of negligence in failing to protect the banks of the bayou at the ends of the culvert between the filling stations, it remains a fact that such negligence had no causal connection with the accident which caused the death of the deceased. The evidence shows that he had traveled some 200 feet from the time he left Sikes' station before he slipped off the culvert, and during that time had ample opportunity to get on the paved highway and continue across the culvert in the same manner as any other motorist coming from the west. In fact he had gotten over half way across the bayou when he fell in it.
Had the deceased run into the bayou at the end of the culvert because of the unprotected bank, the question of whether or not the Highway Commission was guilty of negligence in failing to protect the banks of the bayou at the ends of the culvert by proper guards would have been a serious and pertinent question. But as such was not the case, we do not deem it necessary to pass on the negligence vel non of the Commission in failing to protect the banks of the bayou at the ends of the culvert; the deceased would have fallen over the shoulder on the culvert into the bayou in the same manner as he did had there been ample guards on the banks at the ends of the culvert.
The death of the deceased was unfortunate, but, as no negligence on the part of the Highway Commission is shown to have been a contributing factor in his death, there can be no liability on the part of the State.
For the reasons assigned, the judgment appealed from is hereby affirmed at the cost of plaintiff in both courts.