50 So.2d 31 (1951)
ROSIER et al.
v.
STATE.
No. 7541.
Court of Appeal of Louisiana, Second Circuit.
January 5, 1951.
Rehearing Denied February 8, 1951.
*32 Joseph A. Loret, D. Ross Banister, Preston H. Hufft, and W. Crosby Pegues, Jr., all of Baton Rouge, for appellant.
John R. Hunter, Jr., Alexandria, for appellees.
KENNON, Judge.
In the early morning hours of Easter Sunday, April 13, 1947, Mr. Hamilton Coon, his wife, and three of his six minor children were drowned when the automobile in which they were riding proceeded into the water which covered the western approaches to the bridge over Castor Creek on U. S. Highway 84 in Winn Parish, Louisiana. By Act 226 of 1948, the Legislature authorized the present suit, which was brought against the State of Louisiana by plaintiff, Mrs. Mollier Rosier, on behalf of the three surviving Coon children. The eldest of these was emancipated by marriage and has become a party plaintiff in his own right.
Plaintiffs' version of the accident is that as the Coon car was driving west on Highway 84 before daylight, it entered on and crossed over the highway bridge spanning Castor Creek, which constitutes at that point the boundary line between LaSalle and Winn Parishes; that as the car drove *33 off the bridge on the Winn Parish side, it entered water, which was about two and one-half feet deep over the highway; that the force of the current carried the car off the highway dump and into the adjacent bayou, where the car was completely submerged, resulting in the deaths of Hamilton Coon, his wife, and the three younger children.
The petition asserted that the highway had been flooded at the point of the accident for a period of four days preceding the accident; that the Department of Highways had knowledge of the dangerous condition, but that there were no warning signals, signs, flares or lights and therefore the driver of the car had no reason to anticipate the water on the highway and that the Department of Highways, knowing the highway was unsafe, should have blocked the highway or provided a safe method of passage over the flooded point.
Damages totaling $51,700.00 were demanded.
After various preliminary pleas were disposed of, defendant in answer admitted the legislative authorization for suit; that the highway at the point named had been flooded and overrun with water for some time prior to the accident, and that the Department of Highways and its employees knew of this flooded condition, but set forth that there was no negligence on the part of the Department of Highways; that several signs bearing the legend "Road Closed" and "Road Under Water" had been placed on the route which the Coon automobile traveled in reaching the point of the accident, and that such signs were in place and illuminated by flares on the night of the accident.
The answer further set forth that the adult occupants of the Coon car were familiar with the road and the fact that same was subject to flooding after heavy rains, and that the driver was therefore guilty of negligence in driving along the road after the heavy rain and in disregard of the warning signs, and further negligent in proceeding along the road after discovery of the presence of the water covering same; that Mr. and Mrs. Hamilton Coon were guilty of negligence in not protesting to their eldest son when he proceeded to drive the automobile along the road after the heavy rains, and in not causing this son to heed the road signs and the presence of water across the road.
The answer further recited that the defendant would rely upon the doctrine of res ipsa loquitur to establish that the adult occupants of the car were guilty of negligence, and that the only proximate cause of the accident was the negligence of the adult occupants. In the alternative, defendant pleaded that the above recited acts of the adult occupants of the Coon car constituted contributory negligence and barred recovery.
From a judgment of the District Court awarding each minor child the sum of $6000.00, defendant prosecutes the present appeal. Plaintiffs in answer ask that the award be raised to the amount prayed for.
The well considered written opinion of the District Court and the thorough manner in which the evidence was presented and the case briefed by counsel for both plaintiffs and defendant have simplified our task of determining the facts upon which our decision must be based. Heavy rain had fallen in the Winn Parish area for four or five days prior to the night of April 12-13, 1947. A number of roads in the vicinity went under water. U. S. Route No. 84 is an east-west road which passes through LaSalle Parish, the towns of Trout and Tullos and continues westward across the LaSalle-Winn Parish line at Castor Creek, and on to the town of Winnfield in Winn Parish. Due to the heavy rains, there was an unusual rise in the waters of Castor Creek and its tributary streams. So much so that by Saturday afternoon, April 12, that portion of U. S. Highway No. 84 just west of the Castor Creek bridge was two feet or more under water, with a swift current flowing north to south and around the east (Winn Parish) end of the Castor Creek bridge. The water covered the road westward from the bridge for some four hundred yards, with the exception of a *34 small island formed by a high portion of the road approximately one hundred fifty yards west of the bridge.
Hamilton Coon and his family lived in the Eden community of LaSalle Parish on the Pollock-Trout road. This community is approximately twenty miles from the Castor Creek bridge, where the tragedy occurred. Hamilton Coon's father lived at Coushatta. In traveling from his home at Eden to his father's home in Coushatta, Hamilton Coon drove on the Pollock-Trout road to Trout, thence westward on U. S. Highway 84 from Trout through Tullos over the Castor Creek bridge into Winn Parish and westward through Winnfield. Near Tullos, U. S. Highway 84 crosses the north-south U. S. Route No. 165. A portion of this route both north and south of its intersection with U. S. 84 was inundated prior to Saturday afternoon, April 12th. There was no water over the Pollock-Trout road between Hamilton Coon's home and Trout, and no water over U. S. 84 between Trout and the Castor Creek bridge.
The employees of the Department of Highways and a Louisiana State Trooper testified franklyand this fact was admitted in defendant's answerthat they had knowledge of the dangerous situation on the Winn Parish side of Castor Creek, where there was a swift current of water over U. S. Highway 84. These officials also knew that the water was over portions of Highway 165, both north and south of its intersection with U. S. Route 84. Sometime prior to Saturday afternoon, April 12, the Department of Highways employees placed three warning signs near the intersection of the above named two U. S. routes; one for southbound traffic on U. S. Highway 165 reading "Road Closed, Detour;" another in the right lane of travel for northbound traffic on the same highway reading "Road Closed;" and a third on the right lane of travel of westbound traffic on U. S. Route 84 reading "Road Under Water. Travel At Your Own Risk." No sign was placed on U. S. 84 eastward, doubtless for the reason that there was no water on the road between this crossroad and the easterly towns of Trout and Jena. At approximately 2:30 a. m. on the morning of April 13th, Hamilton Coon, who had received a letter from Coushatta notifying him of his father's illness, left his home in company with his wife, his son, Aaron Coon, and his three youngest children. Aaron Coon, then aged seventeen, was driving. His mother, holding her two year old son, was sitting beside the driver. Hamilton was sitting on the back seat of the sedan between his twelve year old daughter and his six year old son. The weather had cleared. The Coon car encountered no water as it drove from Eden to Trout and turned westward on U. S. Highway 84. It encountered no water from Trout through the intersection with U. S. 165 and proceeded at normal speed until it reached the Castor Creek bridge. As the car reached the west end of this bridge, it entered the water which covered the last few feet of the bridge and ran in the swift current over the road immediately west of the bridge. The depth and swiftness of the water were sufficient to stop the westward progress of the sedan and to sweep it southward off the highway dump. The car rolled over and came to rest bottom upwards in some twelve feet of water. As the car settled, seventeen year old Aaron Coon, after vainly attempting to wrest his baby brother out of his mother's gripping arms, managed to kick himself through the door and rise to the surface. He was unable to swim in the current, but was carried against a tree to which he clung, where he remained until his cries for help awakened a Mr. Thompson who lived close to the bridge on the Winn Parish side. A deputy sheriff of LaSalle Parish was notified. An outboard motor and other rescue equipment was brought to the scene. After Aaron Coon was rescued from his precarious position, the car was located by means of poles and ropes with weights attached. A diver fastened a chain on to the car and a wrecking truck, driven on the bridge up to the water's edge, pulled the sedan back on to the highway dump. The bodies of Mr. and Mrs. Coon and the three children were removed, the car being held on the dump against the pull of the current while this operation took place.
*35 Aaron Coon, driver of the Coon sedan, testified that there was no water over the road, or highway warning sign of any sort, between his home and the west side of Castor Creek, where the sudden tragedy occurred. Immediately after the discovery of the tragedy, the Sheriff of LaSalle Parish and his deputy made a close check of Highway 84 at the crossroad. They found no sign on the pavement. The sign previously there was discovered face down over on the shoulder adjacent to the ditch. There was no flare burning on or adjacent to Highway 84. The warning signs on U. S. Highway 165 were some distance removed from the lane traveled by Coon on Route 84, and have no bearing.
The road sign found face down on the shoulder was of a sort usually used by the highway department, approximately two feet by four feet in size. Supports or legs were nailed on to keep it standing. As late as 8:30 p. m. on the Saturday night before, this sign was in place with a flare burning. Sometime between 8:30 p. m. and 3:00 a. m., it was knocked off the road or removed from the road to its face down position on the edge of the shoulder near the ditch. The record likewise shows that the flare, which was in place in front of the sign at 8:30 p. m. on Saturday, was also moved. Therefore, at the time the Coon automobile drove westward from Trout, there was no warning light or sign in place on Route 84 at this intersection.
The State of Louisiana, through the Legislature, having consented to the present suit, has voluntarily placed itself in the same legal position with reference to liability for failure to warn the public of the dangerous condition of the highway arising from the action of the elements, as that of the municipalities within the state with reference to the roads and streets within their respective limits. Following are recognized statements of the rules of law applicable to the case before us:
"The duty of maintaining a highway in a safe condition, as discussed supra § 254, includes the duty of providing proper safeguards or giving adequate warning of dangerous conditions in the highway; and this duty is applicable to pedestrians as well as to travelers in vehicles. Accordingly, subject to the rules discussed supra §§ 248-253 relating to the liability of persons and governmental bodies for injuries from defects or obstructions in the highway, the state or governmental body or officer charged with the maintenance of the highway is liable for neglect to guard, place lights around, or otherwise give warning of, obstructions and dangerous points in a highway, or for neglect to furnish suitable barriers or guard rails, as where the road is undergoing repair, wherever necessary for the reasonable safety of travelers, but not otherwise." Volume 40, Corpus Juris Secundum, Highways, § 262, p. 306.
"While the exercise of reasonable care may require a placing of signs warning of dangerous conditions, as where excavations have been opened in the public highway, or the highway terminates abruptly, or a bridge has been destroyed, warning signs need not be maintained at places which do not present an extraordinary condition or unusual hazard, as, for example, curves in the highway of an ordinary character. Where a barrier gives ample and timely warning as to the dangerous condition of the road, there is no duty devolving upon those in charge of the highway to post notices of the condition of the road some distance therefrom. In determining what is reasonable warning, the place at which the danger exists, the nature of the road, and the general situation and circumstances surrounding it are to be taken into consideration, as are also the kind of travel and the speed at which vehicles will probably travel on the road." 42 Corpus Juris, Motor Vehicles, Section 499, page 842, 60 C.J.S., Motor Vehicles, § 192.
"In the case of travel by motor vehicle as in the case of travel generally, due care upon the part of the highway authorities may require the safeguarding of dangerous places by the construction and maintenance of suitable barriers, guard rails, or fences." 42 Corpus Juris, Section 501, page 843, 60 C.J.S., Motor Vehicles, § 190.
"Negligence upon the part of the highway authorities may be predicated on their *36 leaving a dangerous or defective condition of the highway improperly guarded." 42 Corpus Juris, Section 496, page 841, 60 C.J.S., Motor Vehicles, § 188.
"The state, municipality, or highway board responsible for the condition of the highway, if otherwise liable, as discussed supra §§ 249-251, will be liable, although the defect is caused, or the danger from a defect is increased, by the elements, if it knew or should have known of the condition. (Citing in note the following: N.Y.Sporborg v. State, 226 App.Div. 113, 234 N.Y.S. 476LeBoeuf v. State, 169 Misc. 372, 7 N.Y.S.2d 621, affirmed 256 App.Div. 798, 12 N.Y.S.2d 640, affirmed 281 N.Y. 737, 23 N.E.2d 550. VtZeno's Bakery v. State, 105 Vt. 370, 166 A. 379." Volume 40, Corpus Juris Secundum, Highways, § 258, p. 304.
These rules have been followed in the Louisiana cases of Varnado v. State, 18 La.App. 624, 136 So. 771. Clinton v. City of West Monroe, La.App., 187 So. 561. Landry v. State, La.App., 17 So.2d 483. Collins v. New Orleans, 3 La.App. 299.
In the case before us, the presence of the swift running and relatively deep water over the road at the west end of Castor Creek created a highly dangerous situation. There was a turn in the submerged portion of the road. There were no posts marking the roadway. (After the accident, posts were placed along the sides of the road by the highway department). Consequently, an attempt to pass over the road even in daylight hours would have been dangerous. In support of this conclusion, we note the testimony of the sheriff that he and a state trooper had decided to attend an American Legion convention and started a daylight drive from Jena to Winnfield, but turned back when they reached the Castor Creek bridge and observed the water over the road.
The fact that water still covered the road in depth and was flowing swiftly at the time of the accident was established by the testimony of the deputy sheriffs, the state trooper, and others who assisted in the rescue of young Coon by boat and in removing the automobile and bodies from the bottom of the bayou. The testimony of the Sunday morning rescuers was that the water was falling at that time. Therefore, the condition faced by young Coon as he drove off the bridge several hours before the rescue process began, was as bad, if not worse, than that testified to by members of the rescue party. The sheriff, his deputies, a state trooper, and other rescuers testified that there was a swift current over the highway; that after the car had been pulled out of the deep side ditch and on to the dump itself, it would have washed back off the dump had it not been that it was held in position while the bodies were being removed. The state trooper who aided in pulling the car from the water testified that there was a very swift current around the east end of the bridge. Both the trooper and the sheriff testified that the current was sufficient to have washed the car back off the dump but for the holding efforts of the rescuers. Hence, the danger at this point was almost of "bridge out" proportion.
The answer of the Department of Highways admitted that the overflowed condition of the road was known to agents of that department. The testimony of the highway employees showed that they knew that the situation at the accident point was a highly dangerous one.
The record supports the defendant's contention that a warning sign was placed on U. S. Highway 84 south of its intersection with Route 165 and approximately one mile east of the danger point. Since its removal between 8:30 p.m., April 12 and 3:00 a. m., April 13, was shown to be without fault of the Department of Highways, the liability of that agency should be determined upon the basis of whether or not the placing of this particular warning sign at this spot on the Saturday night before was a sufficient compliance with its obligation to the traveling public. It is noted that this sign placed on Route 84 did not purport to inform the public outright that this route was closed to travel. When asked why the "Road Closed" sign was not placed as a warning to westbound traffic at this crossroads as was done for northbound and southbound traffic, the *37 highway employee stated that he had no more "Road Closed" signs and there was not time to get them. As a result, he used what was available, which turned out to be a sign with a qualified warning, "Road Under Water, Travel At Your Own Risk."
When highways are under repair or other roadwork is in progress, it is not unusual for a sign to be placed along the side of the road notifying the public that the road ahead is under construction and that one electing to proceed along the highway does so "at his own risk." A reasonable interpretation of such a sign is that, while the route ahead is not clear and in first class shape, nevertheless it is passable, provided extra caution is used by the vehicle operator. Such a sign is not customarily interpreted to forbid travel, but is taken usually in the nature of a conditional permission, and one ordinarily would not be deemed negligent in continuing to travel in the fact of such a sign provided he maintained a close lookout ahead and exercised caution commensurate with observed dangers.
Defendant in brief urges that the placing of the standard two by four foot "qualified" warning sign in the lane of southbound traffic of Route 84 at the intersection of U. S. 84 with Highway 165, approximately one mile east of the Castor Creek bridge, constituted a sufficient warning to the traveling public. The defendant can be held guilty of negligence only if its action in placing this sign on the highway at this point, approximately a mile from the scene of danger, is not a sufficient discharge of its duty to warn the traveling public of the existence of the peril ahead after that peril had become known to the proper highway officials. The District Court resolved this question against the defendant in the following paragraphs from his well reasoned written opinion:
"Certainly an attempt was made to warn the public of the extreme dangerous situation of the highway to the traveling public perhaps a mile from the scene of danger.
"There was nothing in this warning to indicate just where the danger existed; and certainly the state could not be obligated to see every hour during the night that the sign was not disturbed or removed, which appears to have been done in this instance; but it occurs from the facts in this case that the signs of warning were not completed as fully as should have been done.
"Either the east end of the bridge should have been barricaded or warnings placed to point the public to the fact that the dangerous situation was across the west end of the bridge where the water was flowing swiftly over the highway and where it was dangerous for an automobile to enter.
"Just a general warning as to the condition of the highway did not sufficiently point the traveling public to the danger.
"When Route 84 was traveled from Tullos to and across the bridge without any evidence or warning of danger, they had no information that the approach from the west end of the bridge was a dangerous and hazardous place.
"We think the warning was not sufficient to exonerate the State of Louisiana through the Department of Highways to relieve it from the act of negligence."
No hard and fast rule can be laid down as to the type of warning or barricade that should be erected by road contractors or state agencies to warn the public of travel hazards ahead. The warning should be of a size and nature commensurate with the danger ahead. For instance, if a bridge is out, a complete barricade would be indicated. In a case where the road ahead is impassable, or passable only with extreme danger to life, a barricade with appropriate explanatory sign would be in order.
Had the road sign placed by the highway department on Highway 84 read "Road Closed" instead of the language "road under water" coupled with the expression "travel at your own risk," which implies a qualified permission to proceed, a closer question would have been presented to this Court for decision. But, since the language of the road sign placed on the highway by the state officials was not commensurate with the danger ahead, and since the sign was of a flimsy character and not *38 of the barricade type, and since no additional warning or barricade was placed at the east end of the bridge, and since there was no other water across Highway 84 for many miles east to act as a preliminary warning of this dangerous creek crossing, our opinion is that the District Court correctly concluded that the Department of Highways did not discharge its duty to warn the traveling public of the unusual danger existing at the west end of the Castor Creek bridge.
The fact that the evidence clearly establishes that neither the sign nor flare were in place at the time the Coon vehicle passed this crossroad, makes it unnecessary to consider whether or not plaintiff Aaron Coon and his parents would have been guilty of contributory negligence had the sign been in place at the time they passed this crossroad on their way to the fateful scene.
Since counsel for defendant has not mentioned in brief the recitals of the answer relative to the doctrine of res ipsa loquitur, we will not discuss this subject except to say in passing that we doubt its applicability to the facts of the present case.
The evidence does not support the contention of counsel for defendant that the adult occupants of the Coon car were contributorily negligent in venturing westward along U. S. Highway 84 from Trout to Winnfield and over the Castor Creek bridge. The family lived twenty miles away in another community and was not shown to have knowledge that a particularly dangerous condition was likely to exist at the point where Castor Creek crossed Route 84.
Counsel for plaintiffs asked that the award of the District Court of $6000.00 to each minor be increased. The three surviving children were approximately fourteen, sixteen and seventeen years of age at the time of the tragedy. Their father had a large family. His cash earnings were approximately $200.00 per month. While this was supplemented with small farming operations, the fact remains that the older children could have expected only limited financial help from their father had the unfortunate tragedy not occurred. Of course, no amount of money would be adequate compensation for the loss of their parents and younger sister and brothers. Under all the circumstances, we cannot say that the award of the District Court was not reasonable and proper under the facts disclosed.
The judgment appealed from is affirmed, with costs.