ELLIS, Judge.
This suit for damages arose out of a rear end collision between an automobile in which the plaintiffs were riding as passengers and an automobile that was lawfully parked on the Causeway that crosses Lake Pontchartrain from Mandeville, Louisiana to Jefferson Parish.
Suit was originally filed in the District against the Greater New Orleans Expressway Commission, together with their insurer, Employers Liability Assurance Corporation. Plaintiffs later dismissed their suit insofar as the Great New Orleans-Expressway Commission was concerned by stipulation of counsel that it was immune from suit as it was a creature of the State and as such entitled to the same immunity as the state, reserving all rights against its insurer.
After various exceptions were argued' in the Lower Court, trial was had on the merits, with judgment being rendered ini favor of the defendants dismissing plaintiff’s suit. From this judgment the plaintiffs have appealed.
*709 Plaintiffs allege that an accident occurred on or about September 28, 1956, and as a result of the accident, the north lane of travel was obstructed at the north bascule, all of these facts being unknown to the driver of the automobile in which the plaintiffs were riding, as well as the guest passengers therein. The plaintiffs based their action upon the alleged negligence of the Greater New Orleans Expressway Commission in failing to have any warning signs at the south entrance of the bridge warning the travelers that there was a barricade on the bridge. They further alleged that the Expressway Commission was negligent in failing to have the toll bridge collectors warn the travelers of the existence of the barricades on the bridge, or to post any lights or any other warning signals at reasonable distances in front of the barricade existing on the bridge or to have a flagman to warn of the condition or control traffic at that point. All of these failures existed despite the heavy traffic on the bridge in the south-bound lane of travel at the time the automobile in which the plaintiffs were riding collided with another automobile.
Although plaintiffs denied seeing the lights other than a constantly burning red light that is and was suspended above the highway in their lane of travel, they did admit seeing the red light prior to observing the car parked on the roadway in front of them.
The facts developed from the testimony that are supported in the record are as follows:
On September 28th or 29th, 1956, at around eleven o’clock, the record not being exactly clear as to which was the exact date, an accident occurred that damaged a portion of the bridge near the north bascule of the Lake Pontchartrain Causeway, the accident causing damage to the west girders under the bridge. The cross members under the bridge were not damaged. Principally, there was some damage to the west girders and the bridge engineers decided that the bridge could withstand traffic over the eastern portion of the bridge. After the accident that damaged the bridge, the traffic was stopped completely until approximately 4:00 o’clock in the morning when one-way traffic was allowed on the bridge. The bridge is approximately 26 miles long and has a two lane highway crossing it. The bascule in question, as can be seen from Exhibit A, for the defense, is, in laymen’s terms, a draw bridge. On either side of the draw bridge are two automatic barriers that appear to be 8 to 10 feet tall and when the draw bridge is opened they automatically come down and would prevent an automobile from running into the water while the bridge is opened. There are also vapor lights constructed above the draw bridge and spaced on either side for approximately 200 feet. These lights are referred to as vapor lights in the testimony of the engineers. The vapor lights are overhanging lights that are commonly referred to as street lights or would be street lights that are usually found along a “white way” in many cities throughout the United States.
Fifty feet from the end of the draw bridge there is the automatic barrier that would prevent the automobiles from going into the water. This barrier is a steel plate or a steel net that drops from an overhanging section of the bridge some fifty feet from the edge of the bridge. It is constructed to catch or to stop any automobile that might run past the arm type barrier warning system that is approximately 200 feet beyond the automatic barriers. The arm barriers are equipped with two red blinking lights that extend from approximately in the middle of each lane to the center line. These are the type of barriers that are just below the red and green lights that over-hang the highway in the center of each lane of traffic. The approach to the draw bridge begins to rise at a three degree angle some distance further away from the red and green light and the arm type barrier, thus allowing traffic to see these barriers and warning at *710 a much greater distance. On the night that ithe accident occurred which weakened the west structural portion of the north bascule, the engineer arrived at the scene of the accident shortly after it occurred. The safety precautions taken' for allowing one way traffic were to open the automatic barriers and keep them in a locked position above the draw bridge. Barrels were placed along the edge of the damaged portion of the bridge and down the center line of the bridge with blinking red lights on top of the barrels. These barrels outlined that portion of the bridge that was dangerous to travel near. Two hundred fifty feet behind these barrels were the signal arm barrier of the standard alternate black and white stripes, the signal arm having two red blinking type lights spaced approximately three feet apart. The first light being near the 'end of the signal arm, the second from three to four feet towards the edge of the bridge 'from it. Overhead above the signal arm was a red light that was kept burning constantly. The lights on the signal arms were blinking. The signal arms in the north bound lane of traffic were kept erect and blinking. There is some conflict in the testimony as to whether the additional blinking lights were placed on the curb at the time the accident in question occurred. In addition to these barriers that are an integral part of the warning system on the bridge, when the draw bridge is opened the supervisors had watchmen directing traffic. The watchmen would stay behind the automobiles to warn the approaching traffic of the end of the traffic line and to help direct the traffic in the one way lane, through the damaged portion of the bridge. These watchmen were equipped with flashlights with a red light or covering on the end, such as highway police use to direct traffic.
There is some dispute as to whether the blinking lights on the curve some 200 feet from the signal arms were placed there before, at the time of, or soon after the accident giving rise to this suit and whether .adequate warning signs were given or speed limit signs were at an adequate distance to warn automobiles of the dangerous condition caused by the bridge accident.
Plaintiffs on September 30, 1957 were riding in an automobile with their brother-in-law, a Mr, Ward, traveling toward Covington from New Orleans, after a Sunday outing. They had never driven on the causeway and were quite disappointed when they entered the causeway as it was beginning to get dark and the rain was falling. The evidence does not show that the rain was of such an extent or character or that there was such a great amount of fog so as to obscure their vision for any great distance, plaintiffs admitting that they did see the overhanging red light before they struck the automobile driven by a Mr. Brossette while it was parked at the direction of the watchman. The Brossette vehicle was waiting for the traffic to come through which was traveling in the south bound lane toward New Orleans. The plaintiffs as guest passengers were whiling away the drive across the causeway counting automobiles and were not particularly directing their attention to the roadway ahead. There was no duty that would require them to do so as guest passengers and this would probably explain their failure to notice the watchman or the other red lights as well as the fact that they only remember seeing a red light just before the accident. The accident occurred just south of the arm type barrier that was on the south side of the bascule where the Bros-sette automobile was parked. There were only two automobiles heading north in this vicinity with a third automobile a great distance behind, the lights being barely visible to the occupants of the Ward automobile. The driver of the Ward automobile testified he was traveling about forty miles per hour, perhaps a little less, when he suddenly noticed a red light ahead of him and then, almost simultaneously, he saw the Brossette automobile in the roadway ahead and applied his brakes too late to avoid colliding with thé Brossette automobile. As a result of this collision the plaintiffs suf *711 fered various injuries and sought damages in this suit.
These facts substantially as set forth above were found by the District Court and-aré not seriously disputed by either party. The real question at issue is whether a duty evolved on the defendants to have their toll collectors warn the plaintiffs of the barricades on the bridge or whether the warnings regularly used or particularly used in this case were adequate under allot the circumstances in this particular case.
Plaintiffs have cited various cases 'in support of their position that the defendants were liable for the damages by virtue of their negligence, these cases being Reeves v. State, La.App., 80 So.2d 206; Davis v. Department of Highways, La.App., 68 So.2d 263; Rosier v. State, La.App., 50 So.2d 31; Smith v. State, La.App., 87 So.2d 380, and Simoneaux v. State of Louisiana, Dept. of Highways, La.App., 106 So.2d 742. Without going into the various facts of all of these cases they all have one fact in common that convicted the various defendants of negligence and '.that was in failing to have adequate warning signals. In each of these cases there was some danger on the roadway itself that was not readily apparent to the various plaintiffs, either driving or riding in an automobile in the vicinity of the dangerous road conditions. In each one of these cases the plaintiffs’ automobile or the automobile in which the plaintiffs were riding ran into, over, or off the dangerous condition in the roadway ahead, resulting in the injuries. In other words, for lack of adequate warning of the dangerous conditions in the roadway ahead the plaintiff was injured as a direct result of the dangerous condition itself.
The distinction in the case at bar lies in the fact that the dangerous condition, i. e., the damaged portion of the bridge was never reached by the plaintiffs in the case at bar. The injury occurred when the automobile in which the plaintiffs were riding struck the rear end of an automobile that was parked while its driver was awaiting traffic to clear a portion of the bridge ahead of it. Assuming arguendo that there was a duty devolving upon the defendant to warn approaching automobiles of the one way traffic and the barricades at the bascule caused by the accident, the general rules cited are succinctly stated in Smith v. State, supra, which we quote as follows [87 So.2d 383]:
“ ‘The duty of maintaining a highway in a safe condition, as discussed supra § 254, includes the duty of providing proper safeguards or giving adequate warning of dangerous conditions in the highway; and this duty is applicable to pedestrians as well as to travelers in vehicles. Accordingly, subject to the rules discussed supra §§ 248-253 relating to the liability of persons and governmental bodies for injuries from defects or obstructions in the highway, the state or governmental body or officer charged with the maintenance of the highway is liable for neglect to guard, place lights around, or otherwise give warning of, obstructions and dangerous points in a highway, or for neglect to furnish suitable barriers or guard rails, as where the- road is undergoing repairs, wherever necessary for the reasonable safety of travelers, but not otherwise.’ Volume 40, Corpus Juris Secundum, Highways, § 262, p. 306.
“‘While the exercise of reasonable care may require a placing of signs warning of dangerous conditions, as where excavations have been opened in the public highway, or the highway terminates abruptly, or a bridge has been destroyed, warning signs need not be maintained at places which do not present an extraordinary condition or unusual hazard, as, for example, curves in the highway of an ordinary character. Where á barrier gives ample and timely warning as to the dangerous condition of the road, there is no duty devolving upon those in charge of the highway to post notices of the condition of the road some distance therefrom. In determining what is reasonable warning, the place at which the danger exists, the nature of the road, and the general situation and circumstances *712 surrounding it are to be taken into consideration, as are also the kind of travel and the speed at which vehicles will probably travel on the road.’ 42 Corpus Juris, Motor Vehicles, Section 499, page 842, 60 C.J.S., Motor Vehicles, § 192.”
It is conceded that there were no injuries resulting from the defects or obstructions in the highway. Plaintiffs argue that there was not adequate warning of the one way traffic caused by the damage to the bridge, barricades, and the lights of the automobiles from the heavy traffic approaching from the north. It is urged that the easiest warning that could be used and that was readily available to the defendant was to have the toll operators warn each automobile as it came onto the toll bridge to drive extremely careful near the north bascule and to pay special attention to the traffic that might be accumulated because of the one way traffic at the scene of the accident. Plaintiffs also have argued that warning signs of the barricade ahead should have been spaced at intervals of approximately 500 to 1000 feet.
The rule stated in 42 Corpus Juris, Motor Vehicle Section 499 ; 60 C.J.S. Motor Vehicles § 192 quoted above, setting forth what is a reasonable warning, takes into consideration the nature of the road, as well as the general situation and circumstances, including the speed in which the vehicles will probably be traveling on the road. It does not particularly apply in the case at bar since the danger anticipated, in other words, the damage to the bridge, was not the cause of the accident. The cause of the accident was very likely the driver’s failure to pay close attention to the roadway ahead. There was in his lane of travel, perpendicular to the lane he was traveling in, the arm type barricade with blinking red lights and slightly to his left a barricade arm with blinking red lights indicating a blocked lane to his left. Overhanging the road in his lane was a constantly burning red light. Upon observing this red light which he admitted he saw, he was not traveling at a sufficiently slow speed with which to stop his automobile for the traffic that he should have anticipated to be parked under the red light, or for some distance to the rear.
No explanation was given as to why he did not observe the blinking red lights just to the right of and under the constantly burning red light, or the flagmen who were using flashlights with the red warning signals on them to the rear of the automobiles parked and waiting for the traffic to move so that travel could be resumed in their lane.
We cannot say that the judgment of the lower court was manifestly erroneous after, taking all of these circumstances into consideration. It is our opinion that the proximate cause of the accident and the only cause of the accident was the negligence of the driver of the Ward automobile in striking the automobile ahead of him, and failing to notice the warnings placed there by the defendants, particularly, the signals of the watchmen who were directing the traffic.
The plaintiff has not overcome the question of liability in this case, therefore, it is unnecessary to discuss any other aspect of the case or the quantum urged on behalf of the plaintiff.
For the reasons set forth above, the judgment of the lower court is hereby affirmed.