SARTAIN, Judge.
This is a wrongful death action brought by the widow and children of the deceased Willie Hayes against the East Feliciana Police Jury and its liability insurer, Hartford Accident & Indemnity Company.
Willie Hayes died by drowning when he drove his car off of a washed-out spillway bridge, one of three such bridges east of the main bridge over Beaver Creek on a gravel parish road in East Feliciana Parish.
A resident along the road had placed a sign, about three feet square and bearing the words “BRIDGE OUT”, in the middle of the road in front of his house, about a quarter to a half of a mile from where the bridge was out. The sign was propped up by a fifty gallon drum. A representative of the police jury was notified and drove to the area on Saturday, April 15, 1967. He observed the condition of the bridge and the resident’s sign but took no further action in order to warn eastbound motorists of the hazard. About 4:00 a. m. on Sunday, April 16, 1970, Willie Hayes drove east past this sign and on to his death.
*78 The trial judge found the police jury was negligent in not posting an adequate warning sign or barricade, but he also found that the deceased was under the influence of alcohol when he drove past the resident’s sign to the extent that he was guilty of negligence which was a contributing cause of the accident and thus barring plaintiffs’ recovery.
We affirm the findings of the trial court.
The plaintiffs have appealed contending that the evidence was insufficient to justify the trial judge’s finding that the defendants had proved contributory negligence, an affirmative defense, by a preponderance of the evidence. Plaintiffs further contend that the defendant cannot be held at fault for failing to heed an inadequate warning. Plaintiffs argue that the hazard was not in itself sufficiently visible at night to alert motorists to the danger, but was in fact a virtually invisible death trap below road level of such a nature that a motorist who failed to recognize and avoid it could not be held negligent.
The defendants-appellees contend that the warning was sufficient to apprise motorists exercising reasonable care of the danger, considering the narrow road and all attending circumstances, and that Willie Hayes’s intoxicated condition caused him to disregard it and was, if not the sole cause, at least a contributing cause of the fatal accident.
These are extremely close questions and a further elaboration of the facts may be helpful.
The sign was yellow with white capital letters which were printed by hand and which had been repainted just before the resident placed the sign in the road. The resident testified that he placed the sign in the middle of the road at a point in front of his house because his driveway was the last place a motorist could conveniently turn around before reaching the bridge. Although the road was described as being eighteen to twenty feet across at that point, photographic evidence and testimony showed that motorists usually drove in the middle of the road, except when meeting oncoming cars, and the sign had been placed between the two visible tire ruts in the gravel. Testimony further revealed that a motorist could not have driven past the sign without leaving the main roadway to some extent and using the end of the resident’s driveway, which was, however, about the same level as the roadway.
The testimony relative to Willie Hayes’s activities on the day and night prior to the accident reveals a gap of over ten hours. His widow testified that he left home, in a subdivision north of Baton Rouge, about 2:00 p. m. on Saturday with about $2.00 in his pocket to go to his mother’s house, which was located east of the washed-out bridge on the same road. The next account is that of one E. H. Brown who testified that Hayes had picked up him and another rider outside a cafe in Clinton. This was some time after, midnight, since the cafe had closed at that hour. According to Brown, they went to the house of Monroe Turner, Hayes’s half-brother, which was also in Clinton. Brown said Hayes “was driving fine”, that he did not see Hayes take a drink and.that Hayes did not seem to be drunk. Brown and the other rider waited in the car at Turner’s house for about an hour while Hayes was inside and then Turner and Hayes took them home, with Turner driving the car.
Although Brown testified that Hayes had driven straight from the cafe to Turner’s house, both Turner and his wife Daisy set the time of arrival at 2:20 a. m. but confirmed the fact that Hayes stayed there about an hour before Turner drove the passengers home.
Monroe Turner and his wife Daisy at the trial gave different opinions on Hayes’s *79 condition when he was at their house. However, during the course of the original investigation, both had agreed that they had urged Hayes to spend the night because they thought he had been drinking too much to be driving at that late hour, especially considering the heavy rains and the flooded condition of the roads in the area. The deputy sheriff who wrote down their sworn statement and, after reading it back to them, witnessed its execution before the coroner, testified that he remembered the substantial content thereof and that both Monroe Turner and Daisy said they felt Hayes had been drinking too much to be driving under the circumstances. Daisy gave a substantially identical statement at trial. She smelled alcohol on Hayes and his actions indicated to her that he was either drunk or very sleepy because of what he had had to drink, and that either condition would have impaired his ability to drive safely. Monroe Turner said at trial that he thought Hayes had been drinking but was not drunk and that when Hayes left his house shortly before the accident, “he took off just like a man hadn’t never seen a drink”. He denied making a statement to the contrary during the investigation of the accident.
The trial judge, in his reasons for judgment, seem impressed with the fact that Daisy’s testimony was the same as the statement she had made immediately after the accident. He also stated that doubt was cast upon Monroe Turner’s testimony because of the prior inconsistent statement he gave to the deputy sheriff when no lawsuit was in the making and his denial of the contents of that statement at trial. The trial judge found that the actions of Hayes in going to Turner’s house at that late hour for the purpose of persuading Turner to get out of bed to go with him to drive the passengers home, in staying at Turner’s house for an hour while the passengers sat in the car and in leaving Turner’s house after 3:30 a. m. to go to his mother’s house to pick up some butter, milk and eggs were not reasonable or logical.
Considering these factors as a whole, we can see no manifest error committed by the trial judge in concluding that Hayes was intoxicated within an hour and a half of the accident and was negligent in attempting to drive an automobile under the circumstances.
The remaining issue before us is one of cause: was the warning sign so inadequate, causing the police jury to be guilty of gross negligence, that Hayes can not be held negligent for disregarding its message, whether because of its crude make, the lack of illumination, inattention, intoxication or for whatever reason ?
We believe this question must be answered in the negative.
Our attention has been called to many cases which have discussed the duty of an agency charged with the maintenance of roads and bridges when there are defects and conditions which make travel hazardous. It is beyond doubt that the police jury in the instant case did not do all it could or should have done to prevent the fatal accident. The cases are in agreement that there are no hard and fast rules as to the type and sufficiency of warnings and barricades but such means of protecting motorists should be of a size and nature commensurate with the danger that lies ahead. Dowden v. State of Louisiana, 81 So.2d 48 (La.App.2d Cir., 1955). At night, one of the most dangerous conditions that could possibly exist is a washed-out bridge. Under such conditions, courts have found that complete and permanent barricades, flares, lights and/or watchmen are appropriate if the agency responsible is to fulfill its duty. Rosier v. State of Louisiana, 50 So.2d 31 (La.App.2d Cir., 1951); Dowden v. State of Louisiana, supra.
*80 Defendants-appellees argue that the several cases which have held the particular agency to a high duty of care involved paved, high-speed highways and are not applicable in the case of a rural gravel road. We believe that the nature of the road or highway is incidental when the condition under consideration is so hazardous that the lives of motorists are at stake and we do not believe that the police jury in this case was under any less onerous duty merely because the lives of motorists were jeopardized on a gravel road rather than a paved highway.
We affirm the trial court’s finding that the police jury was negligent in failing to establish proper warnings, flares and a barricade commensurate with the size and nature of the hazard.
However, we cannot ignore the fact that the resident’s homemade sign was in fact placed in the middle of the road in such a position that an approaching motorist would necessarily have seen it and swerved around it in order to proceed eastward. The sign did not merely convey a general message of danger but rather specifically identified the hazard: “BRIDGE OUT”. The evidence reveals that Hayes was familiar with the road and the bridges he would have to cross. Under these conditions, one who was exercising the degree of care required of motorists on public roads would have seen the sign, would have been alerted to the danger and would have heeded its warning. The trial court found, and we agree, that Hayes failed to heed the warning of the sign because of his intoxicated condition and that this failure was a contributing cause of the fatal accident.
For these reasons, the judgment of the lower court is affirmed, at appellants’ costs.
Affirmed.