**WILSON (ZURICH GENERAL ACCIDENT & LIABILITY INS. COMPANY, Limited, Intervenors), v. NATIONAL CASUALTY CO. et al.**

No. 5827.

Court of Appeal of Louisiana, Second Circuit.

March 31, 1939.

Rehearing Denied June 28, 1939.

Writ of Certiorari and Review Denied Oct. 30, 1939.

Foster, Hall, Barret & Smith and Hollingsworth B. Barret, all of Shreveport, for appellants.

Irion & Switzer, J. P. Wallace, and Wise, Randolph, Rendall & Freyer, all of Shreveport, for appellees.

TALIAFERRO, Judge.

On December 30, 1934, plaintiff purchased from T. B. Lanford, Inc., a used Oldsmobile coach, 1934 model. Before closing the sale, he exacted that the two rear wheels be equipped with new casings. These were ordered by Lanford, Inc., from Semon Tire & Service Company, Inc., a retail tire dealer. Both companies are located in Shreveport, Louisiana. The former will hereinafter be referred to as Lanford and the latter as Semon. The tires were sent to Lanford's place of business by a negro boy, an employee of Semon, and were there mounted by the boy. The inner tubes taken from the discarded casings were put in the new ones.

The sold car had been used as a demonstrator by one of Lanford's salesmen since May 15, 1934. When sold, it had been driven approximately 5,000 miles. Plaintiff used it regularly after buying it in and about the city of Shreveport.

At 4:30 the afternoon of August 31, 1935, after having the car checked at a service station, including proper air pressure in the tires, plaintiff left the city in the car en route to Hot Springs, Arkansas. He alleges that when within seventeen miles of his destination, the inner tube of the right rear wheel blew out, which immediately produced deflation of the casing, resulting in such movements of the car that he lost control of it, and, after having gone a short distance under these conditions, the car collided with the rail of a concrete bridge and turned over; that he sustained in the accident serious permanent, physical injuries. This suit was instituted by him to recover damages sustained by him directly and indirectly, as a consequence of the accident.

The following named corporations were impleaded as defendants: T. B. Lanford, Incorporated; Semon Tire & Service, Incorporated; Firestone Tire & Rubber Company; and the National Casualty Company.

Plaintiff's cause of action, if any he has, is primarily based upon the alleged negligence and lack of care of Lanford and Semon in this:

That they did not place a rim strip or liner in the well of the right wheel of the car when the new casing was placed thereon; that the omission of this liner or rim strip necessarily forced the tube to rest unprotected against the metal bottom of the well when the casing was inflated and to deteriorate, become weakened from the accumulation of rust flakes, and ultimately to give way and blow out, as above stated.

The Firestone Tire & Rubber Company is sought to be held liable to plaintiff on the theory that in selling and mounting the casings, Semon acted as its agent. The casings were manufactured by the former company.

The National Casualty Company insured Lanford against loss from negligence of itself and its agents in the conduct of its business of automobile dealer, and for that reason this company was impleaded.

The following articles quoted from plaintiff's petition disclose the facts and reflect the theory upon which he relies to hold Lanford and Semon responsible to him in damages:

"XIII. Petitioner further alleges that the right rear wheel and rim of the Oldsmobile car referred to is so constructed that the rim is 'countersunk', having a deep groove in the center of the rim; that through the base of this groove protrudes the heads of the rivets which secure the spokes to the rim; that in use, the sides and base of this groove become rusty; that a rim strip or liner is necessary to partially fill this grove to prevent the distortion of the inner tube, and to prevent the inner tube from coming in contact with the rusty rim and with the heads of the rivets.

"XIV. Petitioner further alleges that as the direct result of the failure to affix a rim strip or liner to the rim of the right rear wheel of the said Oldsmobile, the tube was distorted when inflated, was forced into and against the sides and base of the groove in said rim, and was injured and deteriorated through coming in contact with rust and the rivet heads described hereinbefore.

"XV. Petitioner further alleges that T. B. Lanford, Inc., by circular, advertisement and otherwise, held out to the general public, including petitioner, that each and every one of the second-hand automobiles owned and offered by it for sale were by said corporation thoroughly inspected and conditioned, and that said automobiles were free from structural defects and dangers, and were safe to use for the purpose for which they were intended.

"XVI. Petitioner further alleges that Semon Tire Service, Inc., by circular, advertisement and otherwise, held out to the general public, including petitioner, that the tires sold by it and work performed by it, in the mounting, replacement, sale, and repair of tires and similar accessories would be first-class, free from structural defects and dangers, and safe to use for the purposes for which such tires and accessories and labor were intended.

"XVI-B. Petitioner further alleges that the Semon Tire Service, Inc., knew and had ample opportunity to know and, therefore, ought to have known that it was dangerous to apply a tire to the right rear wheel of said Oldsmobile, without first affixing to the rim a rim strip or liner; and that T. B. Lanford, Inc., was responsible for inspecting and conditioning the automobile, including the right rear wheel as-

sembly prior to delivery to petitioner; and that said T. B. Lanford, Inc., knew, and had ample opportunity to know, and, therefore, ought to have known that said rim strip or liner was omitted from the assembly, and that such omission was imminently dangerous to life and limb; that in addition to its own knowledge and opportunity for inspection, T. B. Lanford, Inc., delegated to Semon Tire Service Company, Inc., a portion of the conditioning of this car, and thereby adopted as its own responsibility for the work done·by Semon Tire Service, Inc.

"XVII. Petitioner further alleges that the sale and delivery of this automobile to him with the liner or rim strip omitted from the right rear wheel made said automobile imminently dangerous to life and limb; that it was gross negligence on the part of Semon Tire Service, Inc., and T. B. Lanford, Inc., to omit said rim or liner strip; and that his injuries hereinafter described, and the accident hereinbefore described, were the direct proximate result of the negligence of the said defendants."

Plaintiff also avers that he did not remove the rear casings from the wheels after purchasing the car; that he had no knowledge of the impaired condition of said tube through distortion, effect of rust and contact with the rim and rivets.

Plaintiff admits that the Zurich Accident & Liability Insurance Company, carrier of workmen's compensation insurance for his employer, has paid him compensation at the rate of $19.50 per week since injured, and has also paid $250 on account of medical expenses incurred in his behalf.

All defendants deny liability to plaintiff to any extent and on any account. All deny that it was the duty or obligation of anyone to put a rim strip or liner in the wells of the wheels of the car purchased by plaintiff and, therefore, specially deny the charge of negligence directed against Lanford and Semon on that account. In the alternative, each defendant charges that plaintiff's own contributory negligence in the respects detailed in the answers bars recovery by him. In view of the conclusion we have reached on the primary question of negligence, it will serve no useful purpose to encumber this opinion with a detail of facts upon which these special pleas are predicated.

The Zurich General Accident & Liability Insurance Company intervened and prayed that in event plaintiff should recover herein, the total of compensation payments made to him and the amount of medical expenses paid for his account be refunded to it by preference from the judgment in his favor.

Plaintiff's demands were rejected and he has appealed.

The record built up below is a large one. Testimony adduced covers a wide range. A large part of it is pertinent to the many theories advanced to account for the tube giving away. Plaintiff was traveling at the time at a rapid rate down grade. The right rear wheel left the hard surface of the road and traveled 75 feet or more toward the bridge on the shoulder. Whether it was inflated or not over this distance is a controverted issue and likewise is the question whether the tire was inflated or not when the bridge was collided with. We know it was deflated after the collision. Much testimony was adduced on these questions of fact. However, we are relieved of the difficult task of having to solve them. The wheel of the car in question consists of two steel parts, viz; the rim and a spider. The rim has on either side flanges which serve to hold the inflated casing in place. It is 18½ inches in diameter. The spider fits inside the rim and is attached thereto by 14 rivets. The flanges are one-half inch high. The face of the rim is bisected its entire circumference by a depression called a "well", ⅞th of an inch deep and one and one-fourth inch wide. The smooth heads of the said rivets are seated in the bottom of the well. The function of a rim strip or liner is to cover the bottom of the well and protect the inner tube, when inflated, from contact therewith and incidental wear and tear because of such contact.

From the above description of the wheel it will be observed that it has no spokes. Prior to the invention of a wheel of the type discussed, spokes were necessary. These were based in a hub and extended outward at an angle of about 45 degrees through the bottom of the well. The ends of the spokes were bradded unevenly and served as a menace to the lasting qualities of the rubber tube. Hence it was necessary to the life of the tube and an act of ordinary precaution to cover the bottom of the well with a liner. For such wheels, the manufacturers of casings would also furnish along with them a liner. When a new casing was mounted, the liner was also put in place. With the invention

of the type of wheel in question, the reason that imperatively demanded the use of the liner or rim strip ceased to exist. The heads of the rivets have a smooth finish and are flush with the level of the well's bottom. Liners are no longer furnished by the manufacturers of casings and are no longer considered so very important to the life and service of the tube. A clear preponderance of the testimony supports the contention that manufacturers of automobiles do not equip such wheels with liners at this time. It is classed as an accessory and may be had by anyone by paying the small price at which sold. It is definitely shown that the Oldsmobile cars of the 1934 model and since, are not equipped with such liners when shipped from the factory to dealers. No attempt was made to prove that liners were in the wheels of the car in question when the new casings were put on. The old tubes were inserted in the new casings. If liners had been in place, most likely they would not have been removed.

It clearly appears that at the present time, as was also true in 1934, when a customer buys new casings for his car and they are mounted by the seller or anyone else, unless rim strips are also purchased, they are not furnished and inserted. It is optional with the customer whether this accessory is used or not. For the small price for which a liner may be had, it might be considered worthwhile to equip all wheels with them. However, they do not provide full protection to the tube against deterioration from rust. The tube, when inflated, contacts and is pressed heavily against the walls of the well even when a liner is used.

█ Plaintiff only asked for new casings on the rear wheels of the car he was buying. He did not ask that liners be inserted and, of course, did not pay for any. That the car was in good mechanical condition, as was warranted, is patently disclosed by its eight months' use and travel of over 5,000 miles, without any complaint by plaintiff. He knew the use it had been put to before buying and knew the old tubes had been placed in the new casings, yet during the whole eight months' time, he did not dismount any of the casings to determine their condition or that of the tubes. He had previously owned and operated cars and may be charged with knowledge of the ordinary life expectancy of tires and tubes and of the effect continuous use thereof has on them.

All car operators well know that there are many accessories, not indispensable to safe and successful operation, but conducive to convenience and comfort, or to the longevity of the machine or to different parts of it, which may be purchased anywhere. Some of these accessories, like innertubes and other indispensable parts, are of different grade and character and the price thereof varies accordingly. It remains for the owner to determine which, if any, of these accessories and the grade and price thereof he will have put on or into his car.

Plaintiff's position would be no more untenable than it is if the casing had blown out and on examination, it was discovered that it was of 4-ply construction, although he believed it to be 6-ply. He could no more successfully hold defendants responsible for the results of the accident in that case than he can in the present one. The fact that Lanford was not obligated to furnish 6-ply casing, because plaintiff had not demanded that sort, would exempt it from responsibility, as does the fact that plaintiff never asked for nor paid for liners.

█ Anent the question of negligence for not putting the rim strip on the wheel when the new casings were placed thereon, the trial judge says: "The question that first arises is whether the 1934 Oldsmobile came equipped with this rim strip as a part of its original equipment. Plaintiff sought to prove this fact, but did not testify that this model car was so equipped. Several witnesses were heard on the subject and all agree that when the Oldsmobile was first equipped with drop center rims, the spokes of the wheels were made of wire and protruded through the rim and these were equipped with the rubber rim strip, but the 1934 model was not equipped with wire spoke wheels and were not sent out by the manufacturer with rubber rim strips as standard equipment. Therefore, since the rim strip was not standard equipment on the automobile sold to plaintiff, defendant was not negligent in delivering an automobile that was 'defectively assembled' because, as we find, it was delivered in the same form as when it left the factory and, as all other automobiles with drop center rims with the same type of wheel as the 1934 model Oldsmobile are sold without rubber rim strips."

We are in thorough accord with the findings of the lower court reflected from the above quoted excerpt.

■ To convict Lanford and Semon, or either of them, of actionable negligence, we would have to find that they or one of them owed to plaintiff a legal duty which they or one of them omitted to discharge or actively breached. The testimony convinces us that they are guilty of neither offense.

■■ The following definitions of negligence, announced by different courts, are apropos of the facts of this case:

"To constitute actionable negligence three essential elements are necessary: First, the existence of a duty on the part of the defendant to protect the plaintiff from injury; second, the failure of the defendant to perform that duty; third, injury to the plaintiff resulting from such failure." Griffin Grocery Company v. Scroggins, 145 Okl. 9, 293 P. 235, 237.

"Test of actionable 'negligence' is not what could have been done to have prevented accident, but what reasonably prudent and careful person would have done under the circumstances. In this connection, failure to guard against a remote possibility of accident, or one which could not, in the exercise of ordinary care, be foreseen, does not constitute 'negligence.'" Lane v. City of Buffalo, 232 App.Div. 334, 250 N.Y.S. 579, 580.

"Negligence consists of three elements, a duty imposed by law, a violation of that duty, and an injury proximately caused thereby." Terre Haute I. & E. Traction Company v. Phillips, 191 Ind. 374, 132 N. E. 740.

"'Negligence' is breach of duty to use care, and, if there is no duty, there is no negligence." Stevens v. City of Manchester, 81 N.H. 369, 127 A. 873.

"It is a well-recognized rule of law that negligence is the violation or disregard of some duty." Prescott v. Central Contracting Company, 162 La. 885, 111 So. 269, 270.

Finding no error in the judgment appealed from, it is hereby affirmed with costs.

## On Application for Rehearing

PER CURIAM.

We found and held, as did the trial judge, that the testimony in this case clearly established that rim strips were not classed as standard equipment of the 1934 model Oldsmobile cars, and, therefore, defendants omitted no duty due to plaintiff by not inserting such a strip in the rear wheel of his car at the time new casings were placed thereon. Having reached this conclusion on the question of fact, it inescapably followed that defendants were in no respect responsible to plaintiff in damages for the injuries sued for.

The application for a rehearing primarily challenges the correctness of our findings in the respects mentioned. It is supported by affidavits of persons in a position to know the facts about which they swear, who declare that the wheels of cars of the kind and character of plaintiff's were, in 1934, invariably equipped with rim strips to protect the tube, and that such equipment was standard.

In passing, we confess that had these affiants given testimony in the case in keeping with the contents of their sworn statements, our conclusion on the question of fact mentioned would most probably have been different.

We are asked, in the alternative, to grant a rehearing in the case and to remand it for the purpose of allowing the reception of further testimony.

■ To arrive at the conclusion upon which our opinion was primarily based, to-wit: absence of any negligence on the part of defendants for omitting to incorporate a rim strip in the right rear wheel of the car, we necessarily had to study the entire mass of testimony contained in this voluminous record. We reached the conclusion then and have experienced no change thereof, that should it be held that defendants or any of them owed to plaintiff the duty to place the rim strip in the wheel when the new casing was mounted thereon, the ultimate result of the case would be the same. We do not believe that the testimony establishes with any degree of certainty causal connection between the absence of the rim strip and the accident; nor do we believe such connection, in view of all the undisputed facts of the case, is provable to that degree of certainty to justify a court to base a judgment upon. Supporting what we here say, it is pertinent to add that this car and its inner tubes had been in constant service for sixteen months and had traveled 10,000 miles or more. The "blow-out" occurred the evening of a hot day, after a drive of some 200 miles, when the car was moving at a very rapid rate down grade. The failure of the tube, in view of these facts and conditions, may be reasonably accredited to one or more of several different causes,

none of which is susceptible of definite proof.

All things considered, we perceive of no good reason for granting a rehearing herein and, therefore, application therefor is refused.