175 So.2d 441 (1965)
William M. MARTIN
v.
STATE of Louisiana, through the State DEPARTMENT OF HIGHWAYS, et al.
No. 1736.
Court of Appeal of Louisiana, Fourth Circuit.
May 3, 1965.
Rehearing Denied June 7, 1965.
Emile J. Dreuil, Jr., New Orleans, for plaintiff-appellant.
Jesse S. Guillot, New Orleans, for defendant-appellee.
Before REGAN, SAMUEL and CHASEZ, JJ.
SAMUEL, Judge.
Plaintiff filed this suit against the State of Louisiana and the Department of Highways, State of Louisiana, for damages resulting from the death of his 18 year old daughter in an automobile accident. Institution of suit was authorized by a state legislative resolution. The trial court rendered judgment on the merits in favor of the defendants, dismissing plaintiff's demand. Plaintiff has appealed therefrom.
The pertinent facts are not in dispute. The accident happened on April 30, 1960, a clear day, at approximately 1:45 p. m. During a late lunch period plaintiff's daughter had taken a ride with a young man who worked with her at a local market. She was the only passenger in his 1950 model automobile. They were traveling on a two lane highway, known as Woodland, on the right descending bank of Orleans Parish in the direction of the Algiers Cut-Off Bridge, a vertical lift draw bridge spanning the Intracoastal Canal on the boundary line between Orleans and Palquemines Parishes. The young man was unfamiliar with the *442 highway, which forms an "S" curve through a wooded area about a half mile before reaching the bridge on the Orleans Parish side and then straightens out 850 feet away from the bridge's wooden guard barricades. The barricades are a distance of 234 feet from the nearer end of the bridge which is open when the draw is lifted.
As the car emerged from the curve the bridge was open. Another car, with an attached trailer carrying a boat and which also had been traveling towards Plaquemines Parish, was stopped in its right lane near the lowered barricades. The plaintiff vehicle was traveling at a speed of 50 miles per hour. Its driver saw the parked car and moved into the left lane for the purpose of passing it. According to his testimony, it was at that time, when he was about 40 or 50 yards from the bridge barricades, that he first realized the bridge was open. He attempted to apply his brakes and found he had none. He had repaired the brakes the day before but a later examination of the car, itself in very poor condition throughout, revealed it was without brakes due to a defect in the master cylinder and a resultant absence of brake fluid. The driver then turned off the ignition and attempted to shift gears in an effort to slow the vehicle but the car crashed through the left wooden barricade, continued forward the full distance of 234 feet to the open end of the bridge and plunged into the canal. In doing so it went over fender pilings 10 feet from the open end of the bridge and into the canal near the center thereof, a distance of approximately 50 feet from the open end. In some unexplained manner the driver was forced from the vehicle and escaped; but plaintiff's daughter was trapped in the car and drowned.
As the car had rounded the curve and approached the open bridge various safety measures were present and several warning devices were in full operation. A clearly visible sign reading "DRAW BRIDGE" was on the right shoulder of the highway more than 500 feet from the bridge. Another sign, also on the right shoulder and about 500 feet from the bridge, stated the speed limit was 25 miles per hour. There were yellow stripings on the surface of the highway in the right lane next to the yellow center line, signifying a no passing zone. The two wooden safety barricades, one on each side of the highway and each three quarters of an inch thick with a width of eight inches narrowing to three inches, were in the down position completely across the highway. Each barricade was painted with broad black and white diagonal stripes and on each was a red light which was flashing. On the right lane barricade there was a sign marked "STOP" in large letters. On the right shoulder of the highway a short distance in front of the base of the barricade on that side was a post 9 feet in height with four vertical lights each ten inches around flashing the word "STOP", another flashing light above those four, and a ringing bell on top of the last mentioned light; all of these lights were visible to an approaching motorist.
The bridge was equipped with an additional safety feature not in operation at the time of the accident. The device is known as a Sawyer barrier and consists of steel cables operated on a series of springs. Within certain limitations as to vehicular speed and weight, it is designed to bring a moving vehicle to a stop. When in operation it extends across the roadway approximately 74 feet from the open end of the bridge. Ten days before the accident in suit the Sawyer barrier had been dismantled for repairs due to a defect in its operating mechanism. It had not been repaired and placed in operation at the time the accident occurred.
Testimony in the record shows that the Sawyer barrier, if functioning properly, would have stopped the vehicle in which plaintiff's daughter was riding. The testimony is also to the effect that the occupants of the car would have been injured, perhaps fatally, as a result of running into the barrier.
*443 The Algiers Cut-Off Bridge was built in 1953 partially with Federal funds and the Sawyer barrier was included in the construction plans as a result of a Federal requirement. While it has never been an established policy of the highway department to construct its bridges with the Sawyer or other similar type barrier, in later years such a barrier has been included in construction for the purpose of being consistent. Probably 25 of "40 some-odd" bridges in the nine parishes comprising the highway district in which Orleans Parish is located are equipped with some type of positive barrier.
The Sawyer barrier on the Algiers Cut-Off Bridge had been inoperative on other occasions, chiefly as a result of wind action. On one of those occasions an automobile had been driven over the open end of the bridge and a fatality resulted. However, in that case the on-coming wooden barricade in the lane in which the car was traveling was open to approximately 45 while the other three barricades were closed, the driver apparently thought the bridge tender was permitting him to cross and he attempted to do so. Thus the cause of that accident was not similar to the instant case.
Plaintiff's claim is based solely on the fact that the Sawyer barrier was not in operation. Relying heavily upon the case of Dixie Drive It Yourself Sys. New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298, he contends the failure to have that barrier properly functioning constitutes negligence on the part of the Department of Highways and that such negligence was the proximate cause of the accident.
Generally, it is the duty of the highway department to construct and maintain the highways, and this includes bridges which are a part thereof, reasonably safe for a traveler himself exercising ordinary care; a highway will be deemed safe within these requirements if it may be negotiated successfully by all but the very reckless and careless drivers, there being no obligation to construct and maintain highways so as to insure the safety of such drivers. See Dowden v. State, La.App., 81 So.2d 48; Davis v. Department of Highways, La.App., 68 So.2d 263; Goodwin v. Department of Highways, La.App., 53 So.2d 161; Rosier v. State, La.App., 50 So.2d 31; DeHart v. State, La.App., 46 So.2d 366; Wilson (Zurich General Accident & Liability Ins. Co.) v. National Casualty Co., La.App., 191 So. 574; 60 C.J.S. Motor Vehicles § 192; 40 C.J.S. Highways § 262; 40 C.J.S. Highways § 254b; 11 C.J.S. Bridges § 68.
While due care may require the safeguarding of dangerous places by the erection and maintenance of suitable barriers and guard rails, it has been held, although not in any Louisiana cases known to us, that a barrier sufficient to stop a motor vehicle need not be maintained at a draw bridge. Barber v. City of Seattle, 182 Wash. 672, 48 P.2d 234. And the following authorities support the proposition that there is no duty to erect barriers sufficient to withstand the impact resulting from the momentum of a moving automobile out of control or recklessly driven. Smith v. Sharp, 82 Idaho 420, 354 P.2d 172; Swain v. City of Nashville, 170 Tenn. 99, 92 S.W.2d 405; Watkins' Adm'r v. City of Catlettsburg, 243 Ky. 197, 47 S.W.2d 1032; Gerrie v. City of Port Huron, 226 Mich. 630, 198 N.W. 236; Davison v. Snohomish County, 149 Wash. 109, 270 P. 422; 5 Blash.Auto § 3263; 11 C.J.S. Bridges § 72.
In order for there to be negligence on the part of the Department of Highways in the instant case, it is first necessary that the Department be under a duty to operate the Sawyer barrier on the Algiers Cut-Off Bridge. Plaintiff concedes there is no law, regulation or rule requiring the Department to operate the barrier. But he contends: (1) under the duty of reasonable care the Department was required to have the barrier properly functioning; (2) what constitutes the reasonable care required on the part of the Department is shown by the Department's *444 regular precautionary practice of using the Sawyer barrier; and (3) the departure from that regular precautionary practice in the instant case, i. e., the breach of the standard of conduct set up by the Department itself, constitutes negligence.
Clearly, the driver of the car in the instant case did not rely upon the operation of the Sawyer barrier. He was not familiar with the highway or the bridge and had no prior knowledge of such operation upon which he could rely. Even had he possessed that knowledge, he would not have relied upon the prior conduct. We cannot conceive of any reasonable driver proceeding onto a bridge which is or may be open in reliance upon his vehicle being stopped by the violent crash necessarily resulting from running into a positive type barrier. At the speed at which the driver in the instant case was traveling it could well be that he might have preferred the water to the crash.
We do not feel that the installation and prior operation of the Sawyer barrier on the bridge here involved, or the fact that a similar type of positive barrier has been installed and operated by the Department on other bridges, are sufficient to justify a conclusion that the non-operation of the barrier in the instant case constituted negligence. The fact that many of the bridges in the same highway district are operated without benefit of a positive type of barrier indicates to us that such an operation is not a part of a reasonable standard set by the Department itself.
The record contains no testimony or other evidence, expert or otherwise, to the effect that the operation of a positive barrier is or should be a part of the Department's duty of reasonable care. We cannot hold that reasonable care necessarily includes the use of such a barrier and we conclude that plaintiff has failed to show negligence on the part of the Department.
In connection with this conclusion the case of Dixie Drive It Yourself Sys. New Orleans Co. v. American Beverage Co., supra, is inapplicable. In that case there was a finding of negligence based on a failure to display signal flags a specified distance from a vehicle stopped on a highway as required by statute. That finding was based upon the violation of a statutory requirement. In the instant case there is no such requirement under any law, regulation or rule. Nor, as we have pointed out, is there either a violation of a reasonable standard of conduct set by the Department or a violation of reasonable care.
The judgment appealed from is affirmed.
Affirmed.