215 So.2d 913 (1968)
James L. WALL et al.
v.
AMERICAN EMPLOYERS INSURANCE COMPANY et al. (State of Louisiana, Through the Department of Highways).
Jeff L. BUTLER et al.
v.
AMERICAN EMPLOYERS INSURANCE COMPANY et al. (State of Louisiana, Through the Department of Highways).
E. L. PROTHRO, Jr., et al.
v.
AMERICAN EMPLOYERS INSURANCE COMPANY et al. (State of Louisiana, Through the Department of Highways).
Theron T. FRYE et al.
v.
STATE of Louisiana, THROUGH the DEPARTMENT OF HIGHWAYS, et al.
Nos. 7464-7467.
Court of Appeal of Louisiana, First Circuit.
November 12, 1968.
Rehearing Denied December 16, 1968.
Writ Refused January 24, 1969.
*914 Shaw & Shaw, Homer, for plaintiff-appellant.
Fred L. Jackson, Homer, Burton, Roberts & Ward, Horace C. Lane, Philip K. Jones, Baton Rouge, for defendants-appellees.
Before LANDRY, REID and SARTAIN, JJ.
LANDRY, Judge.
Pursuant to authorization contained in certain joint resolutions of the state legislature, *915 plaintiffs instituted these actions in tort against numerous defendants, including, inter alia, the State of Louisiana, Through the Department of Highways (Department), and the Police Jury of Claiborne Parish, to recover damages for personal injuries and death claims arising from a two-car intersectional collision asserted to have been caused by the Department's failure to properly sign or otherwise adequately mark the crossing to alert motorists of what otherwise amounted to an alleged "death trap."
From the decree of the trial court sustaining the Department's motion for summary judgment and dismissing the claims of all petitioners against the Department on the basic finding that said defendant was not responsible for maintenance and supervision of the highways concerned, plaintiffs have appealed. We find the trial court has properly resolved the sole legal question involved in these proceedings, namely, that as a matter of law responsibility vel non for supervision and control of the highways in question rests exclusively upon the governing authority of Claiborne Parish.
Initially we note ex proprio motu that the appeals in the Prothro and Frye cases, Numbers 7466 and 7467, respectively, must be dismissed inasmuch as the bonds for the devolutive appeals therein were not timely posted. The records in these cases indicate judgments were rendered in open court, on October 25, 1967, after the matters had been orally argued and submitted on said date. Judgments were then signed in open court on October 27, 1967, but the bonds ordered by the trial court were not posted until February 9, 1968. No applications for new trial or rehearing were made by either plaintiff. LSA-C.C.P. Article 2087 provides that bond for a devolutive appeal must be furnished within 90 days of certain specified occurrences. It suffices to state that in the mentioned cases the 90 day period expired prior to the furnishing of security. Failure of appellant to timely file the required security is fatal to the appeal inasmuch as the appellate court is without jurisdiction to entertain an appeal under such circumstances. LSA-C.C.P. Article 2087; Wulff v. Mayer, La.App., 144 So.2d 246. Accordingly, the appeals in the Prothro and Frye cases, supra, are hereby dismissed. It is to be understood that our subsequent remarks herein are confined solely to the cases remaining on appeal, namely, the Wall and Butler cases, Numbers 7464 and 7465, respectively.
Inasmuch as the instant appeals are restricted to plaintiffs' claims against the Department, it is unnecessary for this court to comment upon or determine whether the alleged conditions attending subject crossing were such as to make it hazardous and dangerous as alleged by petitioners. Since we find the Department was not legally responsible for maintenance, signing or marking of the junction in question, we do not reach the question of its alleged hazardousness and refrain from any discussion of said issue as it remains to be tried in the court below.
It suffices for the instant case to relate that the accident occurred when a Chevrolet automobile being operated by Mrs. Eunice Vize, traveling easterly on "Old Minden-Arcadia Road", collided with another Chevrolet car driven by Brenda Gail Prothro, traveling northerly on intersecting "Harris Road". It is acknowledged that subject crossing is situated 5.8 miles east of the city limits of Minden, Claiborne Parish, in an unincorporated area.
Plaintiffs' position that the Department is legally responsible for signing or marking subject crossing is based on the following contentions: (1) The Department failed to discharge its obligation of supervising and regulating traffic control of the intersection and make same safe for travel in violation of LSA-R.S. 32:2; (2) The Department failed to install and maintain adequate and proper system of traffic control devices (signs) at the crossing contrary to the provisions of LSA-R.S. 32:235(A) and LSA-R.S. 48:345; (3) The Department neglected to maintain the right of way at *916 the intersection in such condition as to afford motorists a clear view of other vehicles traveling in the area in contravention of LSA-R.S. 32:2(A) and LSA-R.S. 32:1 (17); (4) The alleged failure of the Department to provide the Parish of Claiborne with uniform specifications for traffic control devices as required by LSA-R.S. 32:235(A), and (5) The Department delegated its authority to sign and mark the subject intersection to defendant, the Police Jury of Claiborne Parish, which agent failed to discharge said duty thereby rendering the Department responsible for the consequences of its agent's dereliction.
Plaintiffs in effect contend the Department is legally responsible for the proper marking or signing of all public highways within the state. In so arguing, they basically rely upon the provisions of LSA-R.S. 32:2 (The Highway Regulatory Act) which they maintain gives the Department general supervisory powers and control of all highways within the state, particularly Sections 2(A) and (B) thereof which read in full as follows:
R.S. 32:2:
A. The department shall, as an exercise of the police power of this state, supervise and regulate all traffic on all highways within this state; promulgate rules and regulations not inconsistent with this Chapter and the general laws relative to highways and their construction, maintenance and use and the operation of vehicles and pedestrians thereon; and investigate the highways by utilizing surveys, traffic counts, etc., and effect methods and practices thereto, as in its judgment and experience it deems advisable.
B. Any regulation promulgated by the department pursuant to the authority granted by this section or by any other provision of law shall become effective when filed with the clerks of court in the parishes in which such regulation is to be effective or upon the erection of signs on the affected highways giving notice thereof. Acts 1962, No. 310, § 1.
Next, appellants point to the provisions of LSA-R.S. 32:1 (17) which defines "highway" as "* * * every way or place of whatever nature publicly maintained and open to the use of the public for the purpose of vehicular travel * * *." According to appellants, the cited portions of the statute, construed together, impose upon the Department full responsibility for maintenance, control, marking and signing of all highways within the state.
On the contrary, the predicate of the Department's motion for summary judgment is that certain provisions of LSA-R.S. 48, which define the authority, functions and duties of the Department, namely, LSA-R.S. 48:191, when construed in conjunction with the terms of LSA-R.S. 32 (The Highway Regulatory Act), specifically LSA-R.S. 32:235, exempt the Department of responsibility for maintaining, signing or marking any roads or highways not expressly included within the state highway system as defined in LSA-R.S. 48:191.
There can be little doubt but that it is the duty of either the State of Louisiana, or the parish or incorporated municipality in which a public road or highway lies, to make the highways safe for travel. Included in this obligation is the duty of properly signing and marking highways to alert unwary drivers to unusually perilous hazards such as an unexpected or improperly marked intersection. Hall v. State Department of Highways, La.App., 213 So.2d 169 (3rd Cir. 1968); Martin v. State, Department of Highways, La.App., 175 So.2d 441 (4th Cir. 1965); Davis v. Department of Highways, La.App., 68 So.2d 263 (2d Cir. 1953); Rosier v. State, La.App., 50 So.2d 31 (2d Cir. 1951).
In the case at hand the question simply is whether this duty rests upon defendant Department or the governing authority of Claiborne Parish.
Admittedly, prior to 1962, the highway system of the State of Louisiana, which contemplates all public roads whether state, *917 parish or municipal, was somewhat loosely organized and obscurely defined from a standpoint of law. Under the statutes in force before 1962, it was often difficult to fix responsibility for construction, maintenance and control of public highways inasmuch as the laws on the subject were meager and frequently vague if not conflicting and confusing. In an attempt to regulate vehicular traffic upon the public highways, the legislature adopted Act 310 of 1962, known as the Highway Regulatory Act, incorporating same into our Revised Statutes as Title 32 thereof denominated Motor Vehicles and Traffic Regulation. A reading of the numerous sections of Title 32, supra, readily discloses its intent to provide uniform rules for the operation of all motor vehicles traveling upon the public highways of this state.
On the other hand, LSA-R.S. Title 48, Chapter I, Sections 1 to 461.15, inclusive, designated Roads, Bridges and Ferries, Department of Highways, evidences legislative intent to specifically define and designate the rights, powers and duties of the Department and expressly designate those highways of the state over which the Department shall have control and for whose maintenance the Department is made responsible. In this connection we note that Section 191 of LSA-R.S. 48, Chapter I, establishes a state highway system and enumerates by number as well as point of commencement and termination, each and every highway included therein. In addition Section 191, supra, sets the total mileage to be encompassed within the state system and classifies all included highways as either a part of the Primary System, Secondary System or Farm to Market System as therein defined. It is conceded that neither highway in question is included within the State system as defined in Section 191, supra.
In addition LSA-R.S. 48, Chapter II, Sections 471-758, inclusive, expressly creates the Louisiana Parish Road System (Parish System) consisting of all public roads not therefore included in the State System as inaugurated and described in Section 191. More precisely, said Parish System is established by Section 751 which charges the various parishes with direct responsibility for construction, maintenance and operation of all roads within the Parish Systems under the administration of the Police Juries of the respective parishes. Since the roads in question are not expressly included in Section 191, which specifies highways contained in the state system, it follows that said highways fall within the Parish System of Claiborne Parish. LSA-R.S. 48:751.
A reading of LSA-R.S. Title 48, Chapter I, readily discloses legislative intent to restrict and limit the rights, powers and duties of the Department to those highways expressly included in the State System. Not only does the specific enumeration contained in Section 191 bear out the foregoing observation but also said conclusion is supported by the express terms of LSA-R.S. 48:21, which reads in full as follows:
"The functions of the department shall be to study, administer, construct, improve, maintain, repair, and regulate the use of the state highway system and to perform such other functions with regard to public highways and roads as may be conferred on the department by law.

Subject to the limitations of this Chapter and to the extent specifically herein provided, it may also be a function of the department to aid in the construction and repair of public roads, highways, and streets in this state which are not included in the state highway system." (Emphasis by the Court.)
The first paragraph of Section 21, supra, limits the Department's obligation of construction, maintaining and repairing public highways to those within the state system and to other public highways when expressly directed by law. The second paragraph of Section 21, supra, authorizes the Department to aid in the construction and repair of *918 public roads not within the state system but only to the extent such authority is specifically conferred under the provisions of Title 48, Chapter I. In this regard we note that LSA-R.S. 48:193 (G) authorizes the Department to contract with a local police jury to construct or maintain parish roads in those parishes having less than 100 miles of highways not in the state system. Said provision, however, is inapplicable to the case at hand considering it is undisputed that Claiborne Parish has considerably more than 100 miles of parish roads not contained in the state system.
The clear and express division or separation of responsibility of the state and local governing authorities with respect to the roads embraced within the state and parish systems has heretofore been judicially recognized and decreed. Thus we cite with approval the following language contained in Hall v. State Department of Highways, La.App., 213 So.2d 169:
"* * * Not until the Louisiana Highway Regulatory Act of 1962 were local governments given authority and responsibility to erect signs and perform acts in aid of general highway safety, formerly (except for cities and towns) the exclusive responsibility of the state department. See LSA-R.S. 32:41, 32:42, 32:235 (1962). The statutory changes are persuasive that regulatory powers and traffic safety responsibilities, formerly deliberately withheld from local authorities, were now deliberately given them by the 1962 act as a deliberate change of prior law."
It further appears that LSA-R.S. 32:235 B, supra, imposes upon local parish and municipal authorities the mandatory obligation to erect and maintain traffic control devices upon those highways within their respective jurisdictions. In this connection we note that Section 235 B, supra, recites that such local authorities, within their respective jurisdictions, "shall place and maintain such traffic control devices" which shall conform to the Department's manual and specifications. Use of the word "shall" leaves no doubt as to wherein the obligation lies.
While the Department is charged by the terms of LSA-R.S. 32:235 (A) with the onus of adopting a manual and specifications for a uniform system of traffic control consistent with the provisions of Chapter II, it is likewise true that Paragraphs (B) and (C) of Section 235 require such control devices to be erected and maintained by local parish and municipal authorities with respect to highways under their jurisdiction, subject to the further provision that no parish or municipal authority may place or maintain any control device without first obtaining the Department's written approval.
The obvious purpose of Section 235 is to require a uniformity of control devices by making it the Department's responsibility to provide a manual for the common use of all parishes and municipalities. That such uniformity is desirable, in the interest of public safety, is self-evident. In this regard the sole duty of the Department (as regards highways not within the state system) is to provide the required specifications. Upon furnishing same to the various local governing authorities, the obligation of placement and maintenance then devolves upon the local authorities after first obtaining written approval from the Department. The requirement of written approval does not shift the burden of placement and maintenance from local authorities to the Department. The patent aim of such requirement is to insure that the desired uniformity will be achieved so as to avoid confusion of motorists.
That the Department has fulfilled its obligation to adopt a manual of specifications providing for uniform traffic control devices to be used on all highways within the state as required by Section 235 (A), supra, is established in the record. In this connection the affidavit of the Department's employee, Mrs. Carmen Bergeron, discloses that on or about March 18, 1963, a *919 copy of the Department's Traffic Control Devices manual, compiled in 1962 pursuant to Section 235, supra, was mailed to Mr. Elliott O'Rear, the then President of the Claiborne Parish Police Jury. While the record contains an affidavit of Jim Penuell, Road Superintendent, Claiborne Parish Police Jury, that neither he nor any other employee of said Police Jury found such a manual in the Jury's records or files, despite a search therefor, said circumstance is a matter of no moment. The statute in question charges the Department only with the obligation of adopting a manual and specifications for uniform traffic control devices and approving or disapproving such requests as were received from local authorities to install same. No specific form of promulgation, distribution or dissemination thereof is set forth or required by said section. Assuming arguendo, promulgation or reasonable notice thereof to local authorities was required by inference, the mailing of copies thereof, to all parish and municipal governing authorities concerned, as has been shown by the Department, satisfies such mandate.
Nor do we find any merit in appellant's contention that the Department is required by the terms of LSA-R.S. 48:345, as amended by Act 501 of 1954, Section 1, to erect and maintain signs and signal devices upon all public highways within the state. It suffices to state that the section relied upon was expressly repealed by the provisions of Act 310 of 1962, Section 111 (3).
There remains the contention that the Department has delegated to the Claiborne Parish Police Jury the Department's obligation to properly sign and mark the highways in question and is therefore answerable for the Police Jury having failed to discharge this burden. We confess our inability to grasp completely the legal tenet upon which this position is predicated. Nevertheless we deem it sufficient to point out that as a matter of law there can be no such delegation of authority on the part of the Department because there was no obligation incumbent upon the Department in this regard. Consequently there was no burden or onus to transfer or delegate. It is a matter of law needing no citation in support thereof that no person or agency can delegate a power or authority which it does not possess.
Accordingly, the judgment of the trial court in the Wall and Butler cases is affirmed at appellants' cost.
Affirmed.