493 So.2d 563 (1986)
Loretta Prejean FOREST, Individually and In Her Capacity as Natural Tutrix of the Minors, Diane Forest, Kelly Forest, Billy Forest, and George Forest
v.
STATE of Louisiana, Through the LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT: Joseph Vils, Travelers Insurance Company, et al.
No. 86-C-0461.
Supreme Court of Louisiana.
September 8, 1986.
Rehearing Denied October 9, 1986.
*565 Norman L. Sisson, Sharon F. Lyles, Robert J. Adams, Fournet & Adams, Lafayette, for applicant.
Allen R. Ingram, Ingram, Baker & Credeur, Lafayette, for respondent.
CALOGERO, Justice.
The widow and four minor children were awarded damages after a judge trial in their lawsuit arising out of the death of one James Forest against the driver of a pick-up truck (and his liability insurer), and the State of Louisiana through the Department of Transportation and Development.[1] The Court of Appeal affirmed, 483 So.2d 1313, and we granted writs upon application of the Department of Transportation and Development. For the reasons which follow, we affirm the judgments of the lower courts.

FACTS
On June 30, 1982, shortly after midnight, James Forest and his eleven year old son, Kelly, left their residence in Carencro, Louisiana for a bicycle ride. Their route of travel was east on La. Highway 182, then south on the frontage road which parallels the southbound lanes of U.S. Highway 167 (now I-49). At the intersection of La. 726 and the southern end of the frontage road, a series of five barricades (placed horizontally across the road and nailed together) blocked traffic from continuing south on the frontage road, and traffic was thereby detoured at a ninety degree turn to the west. James and Kelly Forest dismounted their bicycles at the barricade, and James Forest began negotiating his bicycle underneath the barricade so that he and his son could continue their bicycle trip unimpeded by vehicular traffic on the unopened section of the frontage road.
As James Forest was lifting one of the barricades to slide the bicycle through, Joseph Vils drove his GMC pickup truck southbound on the frontage road through the center barricade, striking and killing James Forest. Vils fled the scene of the accident and was later identified by young Kelly Forest, who recalled the last three digits of Vils' license plate number. Subsequently, Vils pleaded guilty to negligent homicide.
An appreciation of the roadways and the construction in progress is necessary for understanding the facts of this case. U.S. 167 is the North-South four-lane roadway connecting Lafayette and Opelousas. It is part of the North-South toll road, and is today designated Interstate 49 (I-49). Apparently in an effort to make the highway conform to the requirements of the U.S. Interstate System, the State of Louisiana constructed frontage roads on the east and west sides of U.S. 167 with overpasses over *566 the highway where it intersected with certain of those east-west roadways. The other roads which intersected U.S. 167 had their traffic routed onto the north-south frontage roads on the east and west sides of U.S. 167. Each of the frontage roads carried two way traffic.
La. 726 was one of the roads that was to overpass U.S. 167. The La. 182 overpass to the north had apparently been completed. In an effort to keep southbound traffic (on the frontage road west of and paralleling U.S. 167) out of the construction area of the La. 726-U.S. 167 overpass, five barricades were connected to form one obstruction running completely across the frontage road, including the shoulders. The barricades were supposed to have "detour", "road closed" and arrow signs, and flashing amber lights affixed to them. The barricades and signs were to re-route traffic west on La. 726 and into the town of Carencro.
Approximately 800 to 900 feet north of the barricades there was a temporary shell roadway leading off the southbound lanes of U.S. 167 onto the southbound frontage road, essentially an exit from Highway 167 onto the frontage road for southbound traffic. Two additional barricades were alleged to have been on the shoulders of the frontage road not very far south of the shell roadway mentioned above and approximately 800' to 900' north of the barricade which was struck by the pick-up truck. These two barricades were to warn motorists of the detour ahead.
The suit, as it relates to the defendants other than the motorist Vils and his insurer, is based upon negligence relative to the absence of proper signs, warning devices, barricades, etc. to warn the public of the danger incident to the barricaded frontage road at the construction site.
As noted above, the barricade in question consisted of five type III barricades nailed together, extending from shoulder to shoulder. They were connected to form one barricade. They were nailed together and wired to the ground at the ends. It is the State's contention that on the two center barricades there were "ROAD CLOSED" and "DETOUR" signs with an arrow pointing to the west. In addition, the State contends that each of the five barricades had either two or four amber flashing lights attached to the top cross members and that approximately 900 feet north of the accident site there were two additional warning barricades on the respective shoulders of the road. However the trial court found that on the night of the accident, there were no amber flashing lights, no "ROAD CLOSED", "DETOUR", or arrow signs and that there were no additional warning or wing barricades north of the road closure.
The trial judge found defendant Vils negligent in the operation of his vehicle and the Department of Transportation and Development negligent for failure to properly warn the motoring public of the abrupt and unexpected road closure and detour. He found the decedent James Forest not contributorily negligent, nor at fault in any respect, with no consequent comparative fault quantum reduction. And the trial judge found that Forest did not have a last clear chance to avoid the accident. The district court awarded judgment in solido against defendants Vils and the Department of Transportation and Development.
DOTD's unsuccessful appeal to the court of appeal included as assignments of error the assignments presented to this Court.[2] Those assignments are that the Department was not negligent or liable in any way; that defendant Vils' negligent operation of his motor vehicle was the sole cause in fact of the accident; that decedent James Forest was contributorily negligent, and thus in the alternative plaintiffs' awards should be reduced by decedent's percentage of fault; that James Forest voluntarily assumed the risk of injury; and that the accident was caused by the fault *567 of a third party and/or by victim fault, either of which under Loescher v. Parr, 324 So.2d 441 (La.1975), should absolve the state.
We granted writs primarily to consider the issue raised in the dissent in the court of appeal, that the particular risk of harm to James Forest was not within the ambit of the legal duty imposed on the DOTD to warn motorists of the presence of an abrupt road closure and detour.
There is no question but that the defendant Vils was negligent and properly cast in judgment. In fact he and his insurer,[3] Travelers Insurance Company, did not appeal to the court of appeal. Nor need we address DOTD's arguments relative to victim fault and/or third party fault as a bar under Loescher v. Parr, supra, and C.C. art. 2317, for the plaintiffs' action here is based upon negligence and is asserted under C.C. art 2315. We will, however, discuss DOTD's claim that they were not negligent and/or that they are not liable under an appropriate duty risk analysis, with special attention directed to whether harm to this victim was within the ambit of DOTD's legal duty to warn motorists of the abrupt and unexpected road closure and detour, the matter which prompted this writ grant. And we will also discuss DOTD's contention that plaintiff was contributorily negligent and assumed the risk of injury.
Starting with the latter, contributory negligence and assumption of risk, the State contends that the lower courts erred in not finding James Forest at fault, and in not denying recovery, or correspondingly reducing plaintiffs' awards. It is the State's position that the conduct of Forest, by his "violating the law" and attempting to pass through, under or around the barricade to obtain access to an unopened part of the road was a much more direct cause of the damages suffered by plaintiffs than the failure of the State to place warning signs and flashing amber lights on the barricade, and/or placing other advance warning signs, and that such conduct constitutes contributory negligence and/or assumption of risk.
The State's argument is not well taken. We find, as did the trial judge, that the decedent, James Forest, was not guilty of any form of "fault" by which the plaintiffs' judgment should either be denied or reduced. We note that, at the time of the accident, Mr. Forest was in front of the barricade. Even if we assume, as did the court of appeal, that Forest was in violation of R.S. 32:237 in that he was moving a barricade[4] in an attempt to gain access to a road, use of which had been legally prohibited by the DOTD,[5] we would nonetheless *568 agree with the conclusions of the lower courts that such statutory violation did not constitute a cause in fact of the accident. Nor did Forest's slight movement of a portion of the barricade to gain access to the closed frontage road in any way hinder Vils' ability to appreciate the need to detour west on La. 726. Nor can we find, after a careful review of the record, that the trial judge was clearly wrong in finding that Forest did not assume the risk of his injuries. The trial judge found that Forest was not aware of the danger that he was in, and alternatively, even if he had perceived the danger, he did not have time to take evasive action.
We next address DOTD's contentions that they were not negligent and/or that they are not liable under an appropriate duty risk analysis, along with the facts which are established in the record. With respect to the DOTD's negligence, we note, as did the trial judge, that the State had actual knowledge of the dangerous condition of this intersection. John Andrus, Project Engineer for the Department of Transportation and Development testified that the portion of the roadway north of the barricade was only open for seventeen days and during that seventeen day period prior to this fatal mishap, three accidents were reported where the motoring public ran through the barricade in question.
With particular regard to the barricade and attendant safety warnings, a major part of the trial evidence had to do with whether there existed on the night in question certain warning devices as alleged by DOTD. Those devices were "road closed", "detour" and arrow signs, and flashing amber lights, all allegedly attached to the barricade at the road closure, and two wing barricades located on the shoulders of the roadway in advance of (or to the north of) the actual road closure. There was also testimony presented by the plaintiffs concerning the advisability and/or necessity for warning signs shortly in advance of the barricade, such as "detour ahead", and "local traffic only".
The testimony is clear that there were no warning signs shortly in advance of the barricade. Michael Savoie, job foreman for Tobilar, Inc., testified as to this fact, as did John Andrus, Project Engineer for the Department of Transportation and Development.
There was conflicting testimony as to the existence of wing barricades 800 to 900 feet north of the accident site. John Andrus and Michael Savoie maintained that such barricades were in place, while, on the other hand, there was much testimony that such barricades did not exist. Larry Bacque, a disinterested third party who operated a business in the area of the accident site and who traveled the frontage road on approximately a semi-weekly basis, testified that there were no barricades on the shoulders of the road north of the accident site. Bacque's testimony is corroborated by the three detectives of the Lafayette Parish Sheriff's Office who investigated the hit and run and negligent homicide. The detectives testified that for the purpose of their negligent homicide investigation they traveled the roadway to the north and south, both the night of the accident and the next morning, specifically noting the signs, and that they observed no barricades to the north of the accident site.
Concerning what warning devices, if any, were in place on the barricade at the road closure, Michael Savoie and John Andrus testified that attached to the barricades in question were "detour" signs with arrows pointing west, "road closed" signs, and amber flashing lights. Yet, both men admitted that they had not seen the intersection since the Friday or Saturday prior to the accident and that they did not see the amber lights actually working.[6] On the other hand, there is an abundance of testimony which supports the conclusion that these particular warning devices were not in place at the time of the accident. Larry *569 Bacque testified that the alleged warning devices were not in place. Young Kelly Forest testified that he is positive that there were no flashing amber lights on the barricades. In accord was the testimony of the three deputies of the Lafayette Parish Sheriff's Office. Detective Sergeant Howard Grey, Detective Lt. Ken Talbot and Detective Lt. John Bourque, all of the Lafayette Parish Sheriff's Office Crime Scene Unit, testified as noted above that they investigated the hit and run and negligent homicide. Each testified that he carefully combed the entire area, including the remains of the barricades, for evidence. More specifically, each testified that he looked for evidence as to signing, and glass or lense fragments. All three testified that they did not find any signs or lights or any fragments thereof. Also, each testified that had such evidence been at the scene of the accident, they would have noted it and collected it as evidence.
The trial judge found that on the night of the accident, there were no wing barricades located on the shoulders of the frontage road to the north of the accident site and that there were no "road closed", "detour" or arrow signs nor flashing amber lights attached to barricades. Considering the above mentioned testimony, we cannot say that the trial judge was clearly wrong in so finding. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The DOTD's prime contention, accepted by the dissenting court of appeal judge, and which prompted our granting writs, was that the risk of the harm which befell James Forest was not within the ambit of the legal duty of the DOTD to warn motorists of the presence of the barricade and the detour.
This Court has established that, in cases for recovery on the grounds of negligence, the court must consider the asserted negligence utilizing a duty-risk analysis. Dixie Drive It Yourself System, Inc. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Pierre v. Allstate Insurance Co., 257 La. 471, 242 So.2d 821 (1970); Hill v. Lundin and Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Rowe v. Travelers Insurance Co., 253 La. 659, 219 So.2d 486 (1969); Jones v. Robbins, 289 So.2d 104 (La.1974); Shelton v. Aetna Casualty Insurity Co., 334 So.2d 406 (La.1976); PPG Industries v. Bean Dredging, 447 So.2d 1058 (La.1984). The duty-risk approach as set forth in these cases is essentially an analysis of the following questions in any given case:
Was defendant's conduct a cause in fact of the accident?
Did defendant owe a legal duty which encompassed the particular risk of harm to which plaintiff was exposed?
Did defendant breach that duty?
What damages, if any, did plaintiff sustain?
DOTD's breach of duty has already been discussed here. Damages sustained and the amount thereof are no longer in question in this case. We therefore address cause in fact and duty-risk.

CAUSE IN FACT
We must first inquire whether there is a causal relationship between the defendant Vils' failure to take heed of the barricade and detour, and his thus striking and killing James Forest, on the one hand, and the State's failure to post advance warnings prior to the barricade in question (like "Road Closed Ahead", "Detour" and the like) and failure to place "road closed", "detour", arrow signs, and/or flashing amber lights on the barricade, on the other. Was the allegedly defective signing a cause in fact of the death of James Forest? Did the State's failure to properly mark this barricade and warn approaching motorists have "something to do with" the harm that was suffered by Forest and his family? Jones v. Robbins, supra at 106. We conclude without hesitation that absence of the appropriate warning devices at and before the barricade was a cause in fact of the injuries suffered by Forest. The purpose of those warning devices was to alert approaching motorists of the hazardous situation in sufficient time for them to take the appropriate *570 and necessary action to avoid the hazard.

DUTY RISK
Next, we must ascertain whether DOTD owed a legal duty and whether that duty encompassed the particular risk, exposure to which caused the death of Forest. Hill v. Lundin, supra; Pierre v. Allstate Insurance Co., supra. With respect to whether the State owed a duty to alert the motorists to unusually hazardous conditions existing on its highways (in this case, the presence of a barricade obstructing the frontage road, and the detour), the answer is obvious. The State indeed has that duty, for under LA.-R.S. 48:21 they must "study, administer, construct, improve, maintain and regulate the use of public transportation systems and ... perform such other functions with regard to public highways, roads and other transportation related facilities as may be conferred on the [D]epartment [of Transportation and Development] by applicable law." And, of course, the Department concedes that this particular highway was under their administration and control. The jurisprudence clearly expresses that included in the Department's obligation is the duty of properly signing and marking highways to alert unwary drivers to unusually perilous hazards such as unexpected or improperly marked intersections. Wall v. American Employers Insurance Co., 215 So.2d 913 (La.App.2d Cir.1968), writ denied, 217 So.2d 415 (La.1969); Hall v. State, Dept. of Highways, 213 So.2d 169 (La.App.3d Cir.1968); Martin v. State, Dept. of Highways, 175 So.2d 441 (La.App. 4th Cir.1965); Davis v. State, Dept. of Highways, 68 So.2d 263 (La.App.2d Cir.1953); Rosier v. State, Dept. of Highways, 50 So.2d 31 (La.App.2d Cir.1951).
Whether or not this duty to properly sign and mark highways, to alert unwary drivers to unusually perilous hazards, encompasses the risk of the harm which befell James Forest is the next inquiry in a proper duty risk analysis. More simply stated, is the risk that an unwary driver would crash through an improperly marked barricade and kill a pedestrian[7] encompassed within the duty of the State to make highways safe by the proper use of warning devices?
DOTD contends that its duty to properly sign the barricade in question extends only to the protection of the motoring public from hazardous situations which might be encountered on the other side of the barricade. There is no merit to that contention. DOTD's duty to regulate the highways requires that they insure that the roadways are safe, safe for all persons who might otherwise be harmed, not just for occupants of motor vehicles. The purpose of imposing this duty to warn a motorist of an unexpected and abrupt road closure is not only to protect the unwary driver and his passengers, but also to protect persons and property in the vicinity.
"Furthermore, a risk is not excluded from the scope of the duty simply because it is individually unforeseeable. A particular unforeseeable risk may be included if the injury is easily associated with the rule relied upon and with other risks of the same type that are foreseeable and clearly within the ambit of protection." Carter v. City-Parish Government of East Baton Rouge, 423 So.2d 1080 (La.1982). Even if the risk of a bicyclist's being killed (as he stands in front of a highway barricade) by an oncoming motorist who does not see the barricade is not distinctly foreseeable, his death by this means is easily associated with the violation of DOTD's duty to properly and safely sign the barricade and is like risks of the same type that are clearly within the ambit of protection.
Another necessary inquiry is whether the actions of Vils in failing to see what he should have seen and negligently *571 driving through the barricade and killing James Forest should be viewed as an intervening cause absolving the state from liability. We find that it is not. Rather the two were concurrent causes. A public authority is liable in solido with a motorist when its negligence, combined with that of a motorist, is found to be the cause of the accident. Holmes v. Christopher, 435 So.2d 1022 (La.App.4th Cir.1983), writ denied, 440 So.2d 765 (La.1983); Brandon v. State, Through Dept. of Highways, 367 So.2d 137 (La.App.2d Cir.1979), writ denied, 369 So.2d 141 (La.1979). We therefore conclude that both lower courts were correct in holding DOTD solidarily liable with defendant Vils and his insurer.
The evidence and law support the judgment of the district court. The trial judge was correct in determining that, along with defendant Vils, DOTD was negligent, that they breached their duty to properly warn the motoring public of the abrupt and unexpected road closure and detour, and that risk of the harm which in fact befell James Forest was within the ambit of that duty. Defendants, Vils and DOTD were properly held solidarily liable for the damages suffered by plaintiffs.

Decree
For the foregoing reasons, the judgment of the trial court, and the court of appeal, is affirmed.
AFFIRMED.
DIXON, C.J., concurs.
MARCUS, J., dissents and assigns reasons.
COLE, J., dissents for the reasons assigned by Judge Stoker in his dissent from the Court of Appeal majority opinion.
MARCUS, Justice (dissenting).
In my view, the particular risk of harm to Forest was not within the ambit of the legal duty imposed on DOTD to warn motorists of the presence of the road closure and detour. Accordingly, I consider that the trial judge was clearly wrong in finding DOTD liable. I respectfully dissent.
NOTES
[1] Other defendants were sued but dismissed from the lawsuit before trial. Louisiana Paving Co., Inc. and its insurer were dismissed on motion for summary judgment because they were not involved as contractor, or otherwise, on this particular road construction work. The contractor, Acadian Engineering Co., Inc. and its insurer, and Acadian's subcontractor, Tobilar, Inc., and their insurer, settled with plaintiffs before trial. The Highway Department does not assign as error failure to reduce plaintiffs' damage awards because of settlement with joint-tortfeasors under Harvey v. Travelers, 163 So.2d 915 (La.App.3d Cir.1964). Accordingly, we need not address that issue. Either DOTD does not contend that the contractors were negligent, or, more likely, that matter has been resolved conventionally, or it remains to be resolved, for as the trial judge noted in his reasons for judgment "various third party demands were filed but not argued or presented in court and are therefore deemed to have been abandoned, save and except any and all rights and reservations to the parties as a result of this settlement hereinabove referred to."
[2] In the court of appeal, among several assignments of error, the Department complained that the damage awards were excessive. They have not raised that assignment of error in this Court.
[3] Vils had liability insurance coverage with Travelers Insurance Co. with limits of 10,000/20,000/10,000.
[4] R.S. 32:237. Barricades, signs, and signals; prohibition against tampering with and violating instructions, exceptions

A. No one shall in any way tamper with, move, damage, or destroy any barricade, sign, or signal placed upon any highway by the department or by any contractor or subcontractor doing highway construction or repair work under or by authority of the department;...
B. Persons violating this Section shall be prima facie at fault and responsible for any damage to persons or property resulting from the said violation. Nothing contained in this Section shall be construed to affect the liability of any other persons for failure to properly maintain warnings and markings of construction work.
C....
D....
E. Every person convicted of a violation of this Section shall be punished by a fine of not less than five dollars nor more than one hundred dollars or by imprisonment for not more than thirty days or by both such fine and imprisonment.
[5] 261. Authority to prohibit use of road

The department may prohibit the operation of vehicles upon any highway of this state or impose restrictions as to the weight of vehicles to be operated upon any highway whenever any such highway, because of its substandard condition or because of deterioration, rain, snow, or other climatic conditions, or construction thereof, or because of traffic conditions thereon, will be seriously damaged or destroyed, or the public endangered by the use of vehicles thereon unless such use is prohibited or the permissible weights thereof reduced.
[6] The record reflects that the amber flashing lights to which reference was made in testimony were equipped with photoelectric eyes which automatically switched the light on at dusk and off at dawn.
[7] It should be noted that, at the time of the accident, James Forest had dismounted his bicycle and was standing directly in front of the barricade. At this point, Mr. Forest was effectively a pedestrian standing on the side of the designated roadway or prescribed pathway for motor vehicles.