BARNETTE, Judge.
The plaintiff, Robert Legg, brought this suit on account of personal injuries sustained and damages to his motorcycle as a result of striking a curb or barrier for channelizing traffic on U. S. Highway 90 in the City of New Orleans at the junction of Gentilly Boulevard and New Orleans Street. His suit is based on the alleged negligence of the defendants City of New Orleans and the Department of Highways of the State of Louisiana in the design, construction and maintenance of the traffic control system at that point. More specifically, he alleged that the design and construction of the traffic control devices together with the warning signs, lighting and directional indicators were so basically faulty and improperly conceived and executed as to constitute a trap to the motoring public. From a judgment for defendants rejecting his demands and dismissing his suit, the plaintiff has appealed.
The Department of Highways was responsible for the design and construction of this junction, and the City of New Orleans was responsible for the maintenance, lighting and signing of the intersection at the time of the accident. House Concurrent Resolution No. 27 of the 1964 Extraordinary Session of the Legislature authorized plaintiff to sue the State Department of Highways. There is no issue of governmental immunity in this case.
Highway 90 coming into the City from the east follows a route along Gentilly Boulevard to a point where it makes a left turn into New Orleans Street. Gentilly Boulevard is a major thoroughfare with three lanes for traffic on each side of a raised median. New Orleans Street does not intersect Gentilly but makes juncture at an angle. Traffic moving into the City in a westerly direction on Highway 90 is therefore required to make a left turn across the outbound lanes of traffic on Gentilly Boulevard.
A system of traffic lights is designed to permit traffic moving west on Gentilly, but not turning left on Highway 90, to continue through at all times on a green light by using the; two right-hand lanes. The third lane, the one nearest the median, is widened by reducing the width of the median and is divided into two left-turn lanes of 11 feet width each. These two left-turn lanes are separated from the two right or through lanes by a curb rising from 2 to 8 inches which curves to the left, making connection with the median curb at a point immediately beyond the exit into New Orleans Street. At this point a traffic light controls the left-turn and eastbound traffic. A left-turn arrow permits safe crossing of the eastbound traffic lanes. When a vehicle moving in a westerly direction enters the left-turn lanes and reaches a point where those lanes are separated from through traffic by the curbing, it cannot reenter the through traffic lanes and must turn left on the proper signal. A motorist traveling in the left lane nearest the median is placed on notice that he will be forced to turn left onto New Orleans Street if he continues in this lane by two signs which read “left lane must turn left” posted both on the median ground and on the sidewalk approximately 330 and 380 feet from the point of the commencement of the channelization of the intersection.
The plaintiff was riding a motorcycle on Gentilly Boulevard in a westerly direction shortly after midnight on January 26, 1964. He was accompanied by his step-brother who was riding another motorcycle a few feet to his right and slightly ahead of him. The plaintiff was proceeding in the lane nearest the median, but at a position near the center lane in which his companion *800 was traveling. It was a clear night with good visibility. The record reveals there was no defect in the lighting of the intersection. When the two motorcyclists reached the junction in question, plaintiff entered the left-turn lanes, separated from his companion by the curbing. It was his intention to follow his companion in the through traffic lane, and finding himself separated by the curb designed to force a left turn, in some manner he struck the curb at or near the point where it begins its left turn to make connection with the median curb. The impact caused him to lose control of the motorcycle from which the injuries resulted.
It is plaintiff’s contention that the junction is defective in design alleging, inter alia, that the signs which read “left lane must turn left” have a singular connotation indicating to an unsuspecting motorist that only one lane will be forced to turn left and not two lanes as is required once a motorist enters the channelized section of the junction. He also contends that the raised barrier separating the two through lanes from the left-turn lanes is defective in height and appearance in that it is not easily discernible to the approaching motorist.
In support of his allegations plaintiff offered the expert testimony of Dan S. Martin, a city planner. In his opinion, to insure safe use of the intersection, a larger barrier separating the through lanes from the turning lanes was needed. He further testified that he felt a more adequate directional sign was needed to warn approaching motorists that the left lane would divide into two left-turn lanes. On cross-examination Martin did admit, however, that the "left lane must turn left” signs would indicate to a motorist in the left lane that if he continued traveling in that lane he would have to turn left regardless of whether or not it branched into two or more lanes.
Defendants offered the testimony of several witnesses to support their contentions that the junction was adequately designed and constructed in all aspects. Called to testify were Dwayne Evans, City Traffic Engineer for the City of Baton Rouge; Gerald Mouton, an engineer for the Department of Highways; Lacy A. Glascock, a graduate traffic engineer; and John F. Exnicios, New Orleans City Traffic Engineer. All of these witnesses were qualified as experts in their respective capacities as traffic designers, engineers and planners. Without relating in detail the particulars of these witnesses’ testimony, it is sufficient to state that it was the opinion of all these witnesses that the junction was properly designed, constructed, lighted, and signed to insure the safe and efficient flow of traffic through the intersection.
Considerable testimony was given as to how the left-turn controls might have been differently designed or modified. The question is not whether a different design and construction of traffic controls to insure a forced left turn for Highway 90 traffic without impeding the westbound through traffic on Gentilly Boulevard at the point in question might have been conceived, nor whether another design might have been less hazardous. Indeed there is no design for highway construction and traffic controls so perfect that some modification might not be conceived which would reduce the accident potential. The question here is whether the design, construction and maintenance of this particular traffic control device is so basically faulty, so much at variance from accepted engineering practices in highway design and traffic control, as to constitute an actionable fault within the contemplation of LSA-C.C. art. 2315. The evidence clearly preponderates against such conclusion.
The Department of Highways is not an insurer of the safety of the motoring public. Its duty with respect to design, construction and maintenance of public roads, bridges and traffic control devices is the exercise of ordinary and reasonable care. A discharge of this duty in accordance with generally accepted engineering standards and practices meets the test of *801 reasonable care. Martin v. State Through Department of Highways, 175 So.2d 441 (La.App. 4th Cir.1965); Le Blanc v. Louisiana Highway Commission, 5 So.2d 204 (La.App. 1st Cir.1941).
From a careful review of the record we can find no error in the trial judge’s conclusions, and we incorporate herein his reasons for judgment:
“The accident which is the subject of this lawsuit happened at the intersection of Gentilly Blvd., which is Highway 90, going both east and west and New Orleans Street, a continuation of Highway 90 going west. Gentilly Blvd., prior to New Orleans Street, has three lanes traveling west and east, divided by a narrow neutral ground. Each lane of both sides is 12 feet wide.
“At least 500 feet before the intersection, the motoring public is warned that Highway 90 will turn left. At 250 feet a sign ‘left lane must turn left’ is posted both on neutral ground and sidewalk sides.
“At approximately 150 feet from the intersection, a divider begins which divides the left lane from the middle and right lanes. This divider is approximately 6 inches wide, and rises from street elevation to a height of approximately 8 inches and is painted a solid white on its entire length. Where the divider begins, the left lane is then divided into two lanes both being to the left of the divider and both must turn left. As this divider reaches the intersection, it curves left to the neutral ground on the immediate west side of the intersection creating a barrier across the now two left lanes effectively preventing forward or through movement of traffic. This intersection, which does not cross the westbound lanes of Gentilly Blvd. is controlled by traffic signals. The green light is always on for traffic wishing to continue straight. Those vehicles in the two lanes between the divider and the neutral ground who must turn left face either a red light, so as to allow traffic traveling on Gentilly Blvd. traveling east to proceed, or a green arrow to the left, indicating such turn can now be safely made.
“The plaintiff was traveling west on Gentilly Blvd. (coming into town) and as he approached the intersection he states he did not see the large Highway 90 sign which is above the westbound lanes of Highway 90, but he did see the ‘left, turn [sic] lane must turn left’ and proceeded forward at about 30-35 miles per hour. It was a clear night at about 12:30 to 12:45 with his headlight on his Honda motorbike on. The visibility was good; the plaintiff ran into the divider which, as stated before, curves across the left lane, causing damage to his vehicle and injury to himself.
“The plaintiff contends that the State of Louisiana, through the Department of Highways and/or the City of New Orleans negligently designed, constructed this intersection and that the placing of signs and marking of lanes directing traffic at the approach to and at the intersection are not only inadequate but confusing to the motoring public.
“The evidence did not so establish any negligence in the design, construction and/or signing or marking of this intersection.
“The Court is of the opinion that this accident was caused solely by the negligence of the plaintiff himself in not observing what he should and could have observed well in advance, so as to avoid the divider.
“Accordingly, there will be judgment for defendants, dismissing plaintiff’s suit at his costs.”
For the reasons stated above, the judgment appealed from is affirmed at appellant’s cost.
Affirmed.