LLOYD G. TEEKELL, Judge Pro Tem.
On February 4, 1983, plaintiff Shirley M. Johnson was operating her automobile heading generally west on what is referred to as “CoCo Bed Road”, approaching this *519 road’s intersection with Louisiana Highway 1, preparatory to making a left turn into said Highway 1. This intersection is located approximately two miles south of Clouti-erville, Natchitoches Parish, Louisiana. When she pulled off this small gravel road and into Louisiana Highway 1, she was struck on the left side by a four-wheel drive Chevrolet (Blazer) pick-up truck, owned and operated by Phil Chris Rachal, who was traveling on Louisiana Highway 1 heading in a northerly direction. The accident occurred at approximately 9:00 P.M.
As result of the accident, Ms. Johnson suffered critical injuries, requiring extended hospitalization, with resultant disabling injuries.
Ms. Johnson subsequently brought suit against the State of Louisiana, Department of Transportation and Development, alleging that the accident was caused by the failure of the department to maintain the highway right of way along Highway 1, and also that the highway department was negligent in the design of the bridge and the shoulder of the road so as to cause this to be an inherently dangerous intersection.
After the trial on the merits, the trial judge awarded judgment in favor of Shirley M. Johnson, finding that the State of Louisiana was totally negligent in failing to maintain the particular intersection, and awarded substantial damages to Ms. Johnson along with expert.
The defendant State of Louisiana, Department of Transportation and Development, has filed a timely appeal.
There were only three persons who witnessed the accident, namely plaintiff Shirley Johnson, the driver of the pick-up truck, and his guest passenger Bren Rachal. There is considerable conflict in their testimony as to the facts and circumstances leading up to the accident, particularly involving the movement of plaintiff’s automobile upon its approach and entry into the traffic lane of Highway 1. Although her memory was hampered somewhat because of the injuries received in the accident, the plaintiff testified, in essence, that as she approached Louisiana Highway 1 from the inferior road, she stopped somewhere around the stop sign, looked to see if there was any traffic on Highway 1, and observing none, she pulled up, stopped and again looked to see if there were any vehicles on Highway 1, particularly south, and then pulled up again, stopped and looked for any vehicles on Highway 1, and seeing no sign, headlights or otherwise, of any vehicle traveling Highway 1 in either direction, particularly from the south, she then proceeded to enter the traffic lane of the highway, preparatory to making a left turn onto said Highway 1.
This testimony is directly contradicted by the occupants of the four-wheel drive pickup truck. The driver testified that he saw plaintiff’s vehicle on CoCo Bed Road when he was just entering the bridge, and at that time her vehicle was on the right side of the stop sign (from his point of view). He indicated that the next time he saw her vehicle, she was pulling into the roadway. On direct examination the driver testified as follows:
Q: Now, Mr. Rachal, Ms. Johnson testified that she stopped at the stop sign, looked south, pulled up, stopped and looked south, pulled up again, stopped and looked south, and then proceeded to enter the highway. Is this what happened?
A: No, sir. I’d say not. If she paused that many times, there wouldn’t have been an accident.
Q: When you first saw this car and the next time you saw this car, any idea how much time elapsed?
A: I have no idea of the time, but it— it — it was uh — it was all pretty sudden. I hit the bridge and I just crossed and it was — she was at the other end.
The guest passenger in the pick-up truck, Bren Rachal, testified in part as follows:
Q: Now, when you first saw that car, where was it?
A: It was approaching Highway 1.
Q: Was it traveling?
A: Yes, sir.
*520 Q: Where were you at when you first noticed the car?
A: We, was entering the bridge and going north on 1.
Q: Did you watch that car?
A: Yes, sir.
Q: Did you watch that car up until the time of the collision?
A: Up until it came running out in front of us, ‘til it came up to a stop, then it pulled out in front of us.
Q: Ms. Johnson has testified that she came to stop, looked, pulled up, came to a stop, looked again, pulled up....
A: No, sir.
Q: ... looked and then pulled out in front, is that what happened?
A: No, sir. That’s wrong.
Q: How many times did Ms. Johnson’s car stopped?
A: Once.
The driver of the pick-up truck traveling on Highway 1 testified that he was not sure whether he had his bright lights on or dim lights. His guest passenger testified that the pick-up’s lights were on “high beams”.
There was considerable testimony relating to the design of the bridge, roadway, possible obstruction of sight by trees and bushes, etc. The evidence appears to indicate that immediately before the stop sign (which is located some 40 feet from the edge of the traffic lane on Highway 1), the growth of trees, bushes and undergrowth, could obstruct to some extent someone’s view of a vehicle (particularly a small or low vehicle like a Volkswagon, etc.) traveling along the bridgeway on Highway 1. However, as a vehicle using the inferior roadway would move past the stop sign and approach the traffic lane of Highway 1, there appeared to be no obstruction to prevent an approaching driver from observing a vehicle proceeding over the bridge-way along Highway 1. It should be noted that this accident happened in the early part of February, at a time when there would be little if any leaves on the deciduous (or hardwood) tree limbs or bushes involved.
The evidence indicated that the plaintiff was very familiar with that intersection, that she owned and operated a store nearby, and had traveled Highway 1 at that intersection almost everyday for the past six years. There was evidence presented to indicate that no track record or history of any accidents having previously occurred at that intersection.
Louisiana Revised Statutes 48:21 impose upon the Department of Transportation and Development of the State of Louisiana, a duty to maintain the public highways in a condition that is reasonably safe for persons exercising ordinary care and reasonable prudence. See Robinson v. State, through the Department of Transportation, 454 So.2d 257 (La.App. 1st Cir.1984).
Liability may also be imposed upon the department through either Article 2315 or Article 2317. Under Article 2317, it is imposed upon the custodian or owner of a thing for damages caused due to the unreasonably dangerous condition of the thing. Under Article 2315, the liability is based upon negligence, and is imposed when the department is actually or constructively aware of a condition, and fails to take corrective action within a reasonable time. See Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); La.Revised Statutes 48:35; Stevens v. State of Louisiana, Department of Transportation and Development, 440 So.2d 920 (La.App. 2nd Cir.1983). However, this duty does not extend to every possible risk encountered by the traveling public. See Watson v. Morrison, 340 So.2d 588 (La.App. 1st Cir.1976). Consequently, the highway department is not an insurer of the safety of the motoring public in every instance. See Legg v. City of New Orleans, Department of Streets, 219 So.2d 798 (La.App. 4th Cir.1969).
The plaintiff has the burden of proof, and must establish that the hazardous condition complained of was obviously *521 dangerous to a reasonably careful and ordinary prudent driver, and that the highway department has notice, either actual or constructive, of the existence of any defect, and has failed to correct it within a reasonable time. See Ashworth v. Smith, 386 So.2d 1016 (La.App. 3rd Cir.1980).
Without reciting all of the facts and circumstances reflected by the evidence adduced in this case, it is clear from an examination and reading of the entire transcript, that the plaintiff has simply failed to sustain the burden of proof and establish liability on the part of the Louisiana Department of Highways. When entering upon a public highway from an inferior road, a motorist is obliged to make certain that there is no oncoming traffic on the favored highway that would interfere with a safe entry. This would be particularly true at night, and when anticipating a left turn before entering into and upon the traffic lanes of such a highly traveled road as Louisiana Highway 1. The plaintiff in this case simply did not, for whatever reasons, make the appropriate observations regarding oncoming vehicular traffic before entering upon the highway. There is actually no substantial evidence to indicate that the intersection was inherently dangerous, or presented any potentially hazardous situation upon entering Highway 1 from CoCo Bed Road, other than what would be generally and normally the case at many intersections along the highway.
If there should have existed any problems regarding the movement of the four-wheel drive pick-up truck, suggesting negligence on the part of its driver, then plaintiff should have addressed a cause of action against such driver. However, no negligence on the part of the Louisiana Department of Highways was shown, and no inherently dangerous situation was shown to have existed such as would render the Louisiana Department of Highways liable to the plaintiff under the facts of this case.
For the above and foregoing reasons, the decision of the trial court was not within the discretion generally afforded the trier of the facts, and his ruling is reversed, and judgment is entered against the plaintiff, Shirley M. Johnson, rejecting her demands, at her costs, both at trial and on appeal.
REVERSED AND REMANDED.