THIBODEAUX, Judge.
The State of Louisiana, through the Department of Transportation and Development, appeals a judgment in favor of plaintiff, Larry Bailey, for damages resulting from the collision of his vehicle with a cow. After a bench trial, the State was found to have caused the collision by virtue of its failure to properly post signs along Highway 12 between DeQuincy and Ragley warning travelers of “stock at large.”
The following issues were raised by the State:
(1) Whether or not it was error for the trial court to find the State’s failure to post signs warning of stock at large was a cause in fact of the accident;
(2) Whether or not the trial court’s assessment of fifteen percent fault to Bailey was insufficient; and
(3) Whether or not the award for damages was excessive in light of the evidence.
From our review of the record, we hold that the trial judge did not err in his application of the law to the mostly uncontested facts, nor did he abuse his discretion in either assessing fault or damages. We find the learned trial judge’s reasons for judgment to be legally sound and logically articulated and hereby incorporate them into this opinion and adopt them as our own.
This case comes before the Court as a result of an accident in which a truck collided with a cow. The facts of the case are mostly undisputed. The accident occurred in the early evening hours of September 21, 1988, on Louisiana Highway 12 between DeQuincy and Ragley, Louisiana in Beauregard Parish. The plaintiff was operating his employer’s vehicle and returning home after a day of work. The plaintiff was in the course and scope of his employment with Haynes Timber Company at the time of the accident.
Louisiana Highway 12 is a state highway; the portion of it between DeQuincy and Ragley upon which the plaintiff was travelling at the time of the accident was an “open range” area, as opposed to a “non-stock” area designated under the provisions of LSA-R.S. 3:2803. The Louisiana State Department of Transportation and Development through its agents has supervision of the signing of this highway and the duty to the public maintain it in reasonably safe condition.
It is clear from the testimony that there were no “STOCK AT LARGE” signs on this portion of Louisiana Highway 12; indeed the testimony indicates that there was at least one sign for “LOOSE STOCK ILLEGAL” in the area, which was apparently intended to indicate that U.S. Highway 171, which Louisiana Highway intersects with near the accident site, is a “non-stock” highway. However, the placement of the sign was about six miles west of Ragley and about five miles in advance of plaintiff’s travel route prior to the accident.
All of the evidence suggests that Mr. Bailey was travelling within the speed limit of 55 MPH.
The State Legislature has given the Department of Transportation and Development authority over and responsibility for highways in the State system. This is clear from LSA-R.S. 32:2, which states in part that it (DOTD) “shall supervise and regulate all traffic” on those highways. The portion of Louisiana Highway 12 in *1249 volved in this case is part of the State highway system. Under LSA-R.S. 48:191 DOTD’s regulatory duties include providing signs to warn motorists of unexpected dangers. [See Wall v. American Employers Insurance Company, 215 So.2d 913 (1st Cir., 1968)], writ refused (sic). In sum, the State through DOTD has a sta-tuatory (sic) duty to posts warning signs on Louisiana Highway 12. While it is true that the DOTD is not the insurer of the safety of all motorists on its roads nor is it responsible for every accident that may occur, the Louisiana Supreme (sic) has stated that the DOTD is required to maintain road and highways in a reasonably safe condition and remedy conditions which make the roadway unsafe. In State Farm Mutual Automobile Insurance Company v. Slaydon, 376 So.2d 97, (1979) (sic), at page 99, the Court said:
“The rule in Louisiana is that a motorist has a right to presume that the public highways are safe for ordinary use. He is not required to anticipate extraordinary danger, impediments or obstructions to which he has not been warned ... (sic) Thus, it is the duty of the Highway Department to post signs warning motorist of conditions which pose a danger to the motoring public.” (Sic)
“It is apparent to us that cattle and other livestock frequently roamed this limited access highway and this constitutes an obstacle which creates an unreasonable danger for the unwary motorist ...”
“As the potential danger here was great, certainly some type of warning device was necessary to warn the public of the presence of cattle roaming the highway in this area. The failure of the Department to warn of a condition of which they were so well aware amounts to a breach of its duty to maintain the highway in a safe condition.”
While the Slaydon Case above involved an interstate highway, we do not believe the duty to warn to be different. It arises from the same statutory obligation. In the present case the testimony indicates that DOTD employee, Mr. Caldwell, had received four to five years before the trial from DOTD’s legal department a map on which the portion of Louisiana Highway 12 where the accident occurred is shown to be “open range” highway. Mr. Caldwell indicated that he had received the map as a result of his request. Further, he conceded that (sic) probably knew of cattle on the roadway. He further indicated that according to his records, the DOTD had last done a survey of the signs on this highway in the 1966-69 time frame. This was in excess of 20 years ago. On this basis of this information the Court cannot help but conclude that the DOTD acted unreasonably in discharging its obligation to the public of the State of Louisiana relative to its duty to warn of unsafe conditions. It is clear that the DOTD had in its possession maps indicating the status of this roadway and had failed to check to determine the sufficiency of its signing during a period in excess of twenty years. The Court must therefore conclude as did the State Supreme Court in the Slaydon Case that DOTD that this failure to warn was “a breach of its duty to maintain the highway in a safe condition.”
The State in argument urges the proposition that this failure of signage was not a cause in fact of the accident. We do not find this position to be convincing. In Roberts v. Colonial Penn Insurance Company, 479 So.2d 426, (1st Cir., 1985), (sic) it was noted (at page 429):
“Plaintiff contends that DOTD’s failure to post warning signs was a cause in fact of her injury. This contention rests on the presumption that had DOTD posted a sign, Godso would have obeyed it and thus avoided the accident. The jurisprudence has approved this presumption in intersectional collision cases where traffic signs were damaged or missing ... These cases support the view that a warning sign would have been obeyed and that the absence of such (sic) sign was thus a cause in fact of the accident.”
Mr. Bailey is entitled to the same presumption that he would have heeded such warning signs. While he did state at one point in cross examination that he probably would have still been travelling at the same rate of speed, which was within the speed *1250 limit, had he seen such a warning sign, he also indicated that he would have been more attentive. Under those circumstances he quite probably would have been more alert to the situation with Mrs. Ding-er and been able to have seen something that would have caused some moderation of his speed. The most serious lack of diligence that can be laid at Mr. Bailey’s feet is his apparent failure to notice he (sic) swerving of Mrs. Dingers’ (sic) car just prior to her collision with one of the cows. While it may be argued that the failure to post signs caused Mr. Bailey to be inattentive to Mrs. Dinger’s maneuvers, the Court does not believe that the failure to post signs excuses Mr. Bailey’s obligation as a motorist to generally keep watch for unusual maneuvers on the part of on-coming drivers. The Court is of the opinion that Mrs. Dinger did make some attempt to swerve to miss the cow on the road that her maneuver should have been noticed by Mr. Bailey, who then should have moderated his speed until he could determine that there were no hazards ahead. His failure to notice and so react constitutes negligence on his part which is also a contributing cause to this accident; no other negligence on plaintiff’s part is found. The Court assigns a factor of 15% to this negligence of Mr. Bailey.
DAMAGES
Other than the small wounds noticed in the emergency room on the day of the accident and referred to by Dr. Geor-giades in her deposition, there was no objective evidence to support the complaints of the plaintiff. All treatment and diagnosis provided in connection with this matter have been based upon plaintiff’s subjective complaints. Dr. Raggio in his deposition found only a mild L-4-5 bulge, but felt that such a bulge is normal for someone of plaintiff’s age and condition. It appears that Dr. Raggio was of the opinion that if plaintiff’s complaints were real, they were not severe as most people that have significant pain have objective findings. The diagnosis of Dr. Shamieh of post traumatic neuralgia parasthetica was not based upon any objective finding as the EMG was normal for the lower part of the body. However, none of the medical testimony excludes the possibility that the plaintiff’s subject (sic) complaints were real. In fact both Dr. Georiades and Dr. Shamieh indicated that they believed that the plaintiff was suffering the discomfort that he described. Further, Mr. Bailey’s testimony and demeanor on the witness stand was believable. He appeared to the Court to be sincere in his descriptions of his difficulties and responded credibly to questions on cross examination. The Court is of the opinion that the plaintiff suffered a serious soft tissue injury and nerve inflammation that caused persistent discomfort for a period in excess of a year. While this appears to be an unusual length of time for recovery from such an injury, the opinion of Dr. Shamieh confirms its possibility.
On the basis of the testimony presented the Court finds the plaintiff’s loss of wages to be $4,800.00. Further, the parties stipulated past medical expenses of $17,338.33, which figure the Court adopts. The Court awards the sum of $9,500.00 in pain and suffering and $3,500.00 in future medical expense. These awards are to be reduced by the plaintiff’s negligence factor of 15%. Reimbursement is due the intervenor Trav-eller’s Insurance Company for the recovered percentage of medical expenses and loss wages to the amount of their stipulated contribution of $1,220.58, pursuant to the provisions of La.R.S. 23:1103.”
For the foregoing reasons, the judgment is affirmed. Appellants are charged with court costs at both the trial and appellate levels in the amount of $1,603.59.
AFFIRMED.